## ROUNDY V. KENT.

1. **Contract:** REFORMATION : NEGLIGENCE OF PLAINTIFF. Where a party to a contract, through his own negligence, signs it without knowing or understanding its contents, when he has an opportunity to do so, a court of equity will not reform it so as to make it express his alleged understanding of what it was to contain.

2. ——— : BETWEEN ATTORNEY AND CLIENT : REFORMATION : EVIDENCE. Plaintiff seeks a reformation of the contract in question on the ground that the other party to it was his attorney, in whom he placed special confidence, but who misled him as to its contents. But *held* that the evidence fairly showed that the contract expressed the intent of the parties when it was signed, and that, therefore, the allegation of special confidence was immaterial.

3. ——— : FOR SALE OR COLLECTION OF NOTES : INTERPRETATION. The contract involved in this case (see opinion), *held* to be a contract for the sale of notes, and not merely for their collection.

4. ——— : TO RECEIVE "PROPERTY" IN PAYMENT : INTERPRETATION. A contract for the sale of notes, in which the seller agrees to take in payment all "property" taken in their collection, binds him to accept real as well as personal property.

5. **Appeal:** PRACTICE: NO APPEAL TAKEN : OBJECTION TOO LATE. Where an appellee appears in this court, files an additional abstract, agrees to the record for submission, resists a motion for a continuance, and makes the first argument in the case, he cannot be heard to say that no appeal has been taken, when the appellant's abstract alleges to the contrary, and he denies it for the first time in his reply.

*Appeal from Marshall Circuit Court*—HON. D. D. MIRACLE, Judge.

FILED, MARCH 10, 1888.

THIS is an action for the reformation of a written contract, and to recover five thousand dollars thereon, and for other relief. Defendants deny the alleged causes of action of plaintiff; and defendant Volney Kent asks for affirmative relief. The circuit court dismissed the petition as to defendant Snow, and rendered a decree in favor of plaintiff, and against defendant Kent. From this decree Kent appeals.

*J. H. Bradley*, for appellant.

*Brown & Carney*, for appellee.

ROBINSON, J.—The plaintiff brings suit upon an agreement signed by himself and defendant Snow, of which the following (omitting list of notes) is a copy:

"This article of agreement, made and entered into this 1st day of October, 1878, by and between Wm. H. Roundy, party of the first part, and B. L. Snow, party of the second part, witnesseth that, for value received, the said second party, or assigns, agrees to pay to the first said party the sum of seventy-three (73) cents on each and every dollar realized by the said second party, or assigns, from the following described promissory notes, this day sold by the said first party to the said B. L. Snow, after deducting all of the attorney fees in cases where suit is commenced to collect said notes, and after deducting all interest now due, or to become due, on said notes. * * * And it is further agreed that the said first party shall receive of the said second party, or assigns, all horses, wagons, buggies, cattle, hogs, or any other property or renewed notes, the same as cash, at the valuation which the said second party, or assigns, may take said horses, wagons, buggies, cattle, hogs, or other property, or at the face of the renewed notes aforesaid. The above-mentioned seventy-three cents on each dollar realized on said notes, after deducting all the attorney fees in case of suit, and all interest due, or to become due, on said notes, as herein before specified, is to be paid to the said Wm. H. Roundy by the said B.

L. Snow, or assigns, as fast as the said B. L. Snow, or assigns, shall receive the same. And it is expressly understood that if the above-described notes, or any one or more of them, are worthless, the said B. L. Snow, or assigns, shall charge the same to the said Roundy as cash for their amount at the date they are proved worthless ; the said Roundy hereby representing that said notes are good at the date of his transferring them to the said second party. And the said second party hereby agrees to use due diligence in collecting said notes. In case said notes cannot otherwise be collected, the same shall be put into judgment.

"WM. H. ROUNDY.

"B. L. SNOW."

On this agreement was written an assignment from defendant Snow to defendant Kent, as follows :

"For value received, I hereby sell, assign, set over and deliver to Volney Kent all my right, title and interest in and to or any benefit whatever that may be derived from the within contract, and notes therein described, without recourse.          B. L. SNOW.

"This 7th day of May, 1879."

When the agreement was signed, one or more notes of Snow were given to secure the performance on his part of this agreement. The assignment was made with the knowledge and consent of plaintiff, the note or notes of Snow surrendered, and a note of Kent taken in lieu thereof. The last-named note appears in the record, and provides, in terms, that it is given "simply to secure performance of a contract in writing." It is contended on the part of the plaintiff that the writing signed by himself and Snow does not correctly represent the real agreement ; that he did not read it when signed, and did not know its contents ; that at that time he was advanced in years, and eye-sight dim ; that he was without his glasses, and unable to read writing readily ; that he had great confidence in defendants, and was governed by their advice, and signed without scrutinizing the instrument as carefully as he would, had not the relation of attorney and client existed between them ;

that the paper was read to him by Snow, but not as written; that it was read and explained to him to be in accordance with the verbal agreement of parties, which was that the notes were not to be sold, but were to be transferred for collection only; that plaintiff was to have seventy-three per cent. of the face of the notes, and interest; that the interest was to be divided between plaintiff and Snow, share and share alike; that only personal property, including money, could be received in payment; that the clause in regard to the charging to plaintiff all worthless notes in cash was fraudulently inserted by defendants in lieu of the agreement made, which was that such notes should be returned to plaintiff, and credited at seventy-three per cent. of amount due thereon on the collateral security, or stricken out. The petition further states that the assignment of the contract to Kent was not in good faith; that both defendants are jointly interested therein; that they have collected $3,015, of which they have accounted for but one hundred and fifty dollars. A due-bill for $151.07, dated August 13, 1879, bearing interest at ten per cent., and signed by Kent, is also set out. Plaintiff asks that the contract be construed and reformed, and that judgment be rendered for the amount due. The answers admit the making of the contract and assignment, but deny all fraud and alleged secret agreements. Defendant Kent alleges that the due-bill is without consideration, and was the result of an error in computation; that plaintiff is owing to him, on account of the agreement, about fourteen hundred dollars, with interest thereon from August 1, 1879; and asks judgment for that amount, and that his collateral note and due-bill be annulled and surrendered.

I. The evidence seems to show that the notes in controversy amounted to about fifty-seven hundred dollars, besides interest, when the agreement was made. They were given for so-called "patent-rights" by persons who were living in different states, and at places widely separated. Most of the notes were made payable to

1. CONTRACT: reformation: negligence of plaintiff.

plaintiff, or to a firm of which he was a member. He thought, at the time, that seventy-five per cent. of them could be collected, and that it was desirable for the person collecting to visit the makers. When the contract was made, Snow was a partner of a lawyer, but had not himself been admitted to the bar, and was not so admitted for two or more years thereafter. At least some of the notes in question had been in the possession of the firm of which he was a partner, for collection, since the fall of 1878. The contract, although dated as of that time, was not drawn until the spring of 1879. It was drawn by Kent for both the parties to it. There is controversy as to this, but the plaintiff's claims are contradictory, and the clear weight of the evidence is against him. We think it appears that the writing was read by plaintiff before it was signed, and that he understood its contents at that time. It was under consideration for some days before it was completed. If plaintiff did not know its contents, it was his own fault, and the result of his own negligence, and he is not shown to be entitled to any relief from its provisions. *Wallace v. Chicago, St. P., M. & O. Ry. Co.*, 67 Iowa, 551 ; *McKinney v. Herrick*, 66 Iowa, 416 ; *McCormack v. Molburg*, 43 Iowa, 561. The fact that plaintiff was in error as to the value of the notes at the time the agreement was made, and that to enforce its provisions now may be a hardship for him, does not alter the rule. He was in better position to know the value of the paper than were the defendants, and, if his estimate had proven to be good, the contract might have been as advantageous to him as to either defendant.

II. It is insisted that the relation of attorney and client existed between plaintiff and defendants at the time the contract was signed, and that the law will not uphold it for that reason. Plaintiff is not seeking to avoid the contract, but to reform and enforce it. It can only be reformed to express the real agreement of the parties in case it fails to do so now. The evidence fairly shows that the agreement, as it now appears, expresses the intent of the parties to it when it was signed ; hence

2. ——: between attorney and client : reformation : evidence.

plaintiff cannot now justly complain. We do not wish to be understood as saying that the relationship charged really existed; it is not necessary for us to decide that question.

III. Counsel for appellee contend that the contract itself shows that it was not designed to transfer the title to the notes, but to secure their collection for the benefit of plaintiff. This does not seem to us to be the effect of the language used. An absolute sale is specified, and the ascertaining and payment of the price is provided for. Diligence in collecting and accounting for the proceeds is required. The references to attorney's fees and interest, and kinds of property to be taken, and the amounts to be allowed therefor, seem designed to prevent ambiguity; hence we conclude that the position of counsel is not well taken.

*3. ——: for sale or collection of notes: interpretation.*

IV. It is claimed that the contract contemplates the receiving of personal property only, and objection is made to allowing defendant Kent for a tract of land for which he obtained a deed in partial settlement of one of the claims. The contract does not limit defendant to the taking of personal property in settlement. The evidence tends to show that the taking of the deed in question was approved by plaintiff. But his approval would not be necessary, for the reason that Kent had the right to take it, if he acted in good faith in so doing; and that he did so act does not seem to be questioned.

*4. ——: to receive "property" in payment: interpretation.*

V. It is contended by appellee that the record does not show that an appeal has been taken in this case. This objection is first made in the reply of appellee. He appeared in this court, filed an additional abstract and agreed to the record for submission. He also appeared to resist a motion for a continuance, and made an argument before the argument was made for defendant. His additional abstract does not deny the allegations of the abstract that an appeal had been perfected.

*5. APPEAL: practice: no appeal taken: objection too late.*

We do not think he should be permitted to deny that this case is now properly in this court.

VI. The defendant Kent asks judgment in his counter-claim for overpayment, and an account of notes shown to be worthless, and for a note delivered to plaintiff for collection. Taking all the provisions of the contract together, we conclude that Kent is entitled to retain from each note collected, in whole or in part, attorney's fees, and interest actually collected thereon, but is not entitled to make up any deficiency in a note paid in part by retaining from collections made on another. No authority is given to sell renewal notes. The provision in regard to charging plaintiff with certain notes refers to notes proven to be wholly worthless, and not to those from which something was realized. In some cases notes were settled for less than the interest due. Excluding them, we find that Kent collected $1,045, of which $253.15 was interest. After deducting interest, and twenty-seven per cent. of the remainder, $578.27 was the amount to be accounted for to plaintiff. He has received $158.75 in stock, and the deed and note tendered by Kent, and brought into court, amount to $471.28; making an overpayment of $51.76. Twenty-seven per cent. of the notes shown to be worthless, and the interest due on the total amount of such notes, make $1,216.67. The amount Kent was entitled to for the note delivered to plaintiff for collection is $36.38; making a total of $1,304.81, besides interest, which Kent is entitled to recover from plaintiff. Interest on the amount due from August, 1879, is asked. It is also found that the deed and note tendered in suit belong to plaintiff, and that the due-bill and collateral note of Kent should be cancelled and surrendered. Judgment will be entered for defendant Kent for the amount found due him, with interest thereon at six per cent. per annum from the first day of September, 1879, and for the cancellation of his due-bill for $151.07, and collateral note for $3,533.32.

REVERSED.