REID, MURDOCK & COMPANY V. CHARLES W. BRADLEY AND THE HASTINGS-BRADLEY COMPANY, Appellant.

**Reformation:** NEGLIGENCE AS BAR. Where one signs a contract of guaranty, intending thereby to guarantee payment of purchases of merchandise or advances thereafter made, and the contract

guaranteed all indebtedness which might then or thereafter exist or be owing, which fact he might have discovered by a careful reading of the instrument, he will be held to his contract, in the absence of fraud, as his negligence will bar him relief in equity; and this, though one party to the contract directed the other where to make erasures of clauses covering antecedent debts and said that the erasure under such direction struck out all such clauses, while, as a matter of fact, it took out but one such clause and left others in the writing.

*Appeal from Lyon District Court.*—HON. SCOTT M. LADD, Judge.

SATURDAY, APRIL 9, 1898.

ACTION upon a contract of guaranty. Defendant Bradley admitted the execution of an instrument of guaranty to plaintiff, but claims a mistake therein in so far as it related to any pre-existing indebtedness of the principal, and further says that the contract was obtained through fraud and misrepresentation as to its contents. He prayed for a reformation of the instrument and a dismissal of the petition. The case was transferred to the equity side of the calendar, and tried to the court, resulting in a judgment for plaintiff. Defendant Bradley appeals.— *Affirmed.*

*E. C. Roach* and *McMillan & Dunlap* for appellant.

No appearance for appellee.

DEEMER, C. J.—On and prior to August 23, 1893, the Hastings-Bradley Company, a corporation, was indebted to appellee for goods and merchandise sold and delivered in the sum of four hundred and ninety-three dollars. On that day appellant, Bradley, entered into a written contract of guaranty with appellee, the material parts of which are as follows: "For value received, and in consideration of the forbearance in collection and extensions of time upon the [purchase of merchandise or advances of

money heretofore made to, or] purchases or advances of money which may hereafter be made by or advanced to Hastings & Bradley Company, of Rock Rapids, Iowa, and for other good and valuable consideration, I hereby guaranty the payment of any indebtedness owing to Reid, Murdock & Company by the said Hastings & Bradley Company, of Rock Rapids, Iowa, to the amount of all purchases, together with interest on all the above-described indebtedness at the rate of eight per cent. per annum.    And I hereby further guaranty prompt payment at maturity of any notes which may be given in settlement of such purchases or advances, with interest at eight per cent., waiving my right to any notice of extensions of time, or the fact that such notes may be given; also waiving notice of the acceptance of the within guaranty, meaning and intending hereby, for and by the consideration above mentioned, to unqualifiedly guaranty any and all indebtedness which may now or hereafter exist, or be owing to Reid, Murdock & Company by the Hastings & Bradley Company, of Rock Rapids, Iowa."    Before signing the contract Bradley struck out the words inclosed in brackets, and his contention is that in so doing he intended to absolve himself from liability for all pre-existing indebtedness; that it was the understanding and agreement that the guaranty should relate to future transactions, and that, in so far as it appears to cover past or present indebtedness of the corporation, it is of no validity, because entered into through mistake, and by reason of the fraud of appellee.    A careful reading of the evidence satisfies us that Bradley did not intend to guaranty the past indebtedness of the corporation.    The facts appear to be that prior to August, 1893, Bradley was a stockholder in the corporation.    During that year it became involved, and was unable to promptly meet its

indebtedness. On the eighteenth day of August, Hastings, who had theretofore been president of the corporation, retired, and Bradley was elected in his place. Bradley also became the general manager of the concern. Shortly after this change, appellee's credit man appeared upon the scene for the purpose of securing or collecting the indebtedness then owing by the corporation. By reason of his selection as manager, Bradley was interested in securing a line of credit for his corporation. Such was the attitude of the parties when they met. The credit man insisted upon a guaranty covering past indebtedness. This Bradley absolutely refused to give; being guided to this conclusion through the advice of his attorney. He was willing to become bound for all future indebtedness, but did not wish to assume personal responsibility for past debts. Thus matters stood for a day or two, when Bradley agreed that he would sign a guaranty covering future indebtedness, and indorse to appellee a note held by the corporation upon one Church as collateral to the past indebtedness. It was also agreed that appellee should leave its accounts against the corporation with a bank to which it (the corporation) was indebted, with the understanding that, if any mortgages were executed to the bank, another should at the same time be executed to appellee, which should be second in point of time, only, to the bank mortgage. Attempting to execute this agreement, Bradley signed the contract of guaranty heretofore set out,—which was partly in print and partly in writing,—after having erased the words to which we have referred. The credit man's attention was called to the erasure, and there is no doubt in our minds that Bradley thought he had so changed the contaact as that it applied to future indebtedness only. It is likely that the credit man directed Bradley to the place where the erasures should

be made, but of this there is some doubt. This much does appear, however: that Bradley was able to read and write, and had full opportunity before signing to read the document. There is no evidence of any fraud save a statement of the credit man that the line scratched out was the only one relating to past purchases. Appellant says that the mistake in the signing of the contract was due to oversight in not read· ing it over more closely, and gives as his only excuse for not doing so—*First*, the statement of the credit man; *second*, that "he [the credit man] kept nagging the life out of me, and it was dark in the room, and he pointed to the paper, and said, 'Scratch out that line there, being as to past purchases,' and I scratched it out and signed it." There is no doubt that appellant is entitled to reformation or rescission of the contract, unless it be that his negligence was such as to bar him of relief. It is a general rule that negligence is an insuperable objection to relief in equity, on the ground of mistake. In the case of *Glenn v. Statler*, 42 Iowa, 107, we quoted with approval the rule announced by Judge Story in his work on Equitable Jurisprudence (section 146) as follows: "It is not, however, sufficient in all cases, to give the party relief, that the fact be material; but it must be such that he could not by reasonable diligence get knowledge of, when he was put upon inquiry For if, by such reasonable diligence, he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence." Again, in the case of *McCormack v. Molburg*, 43 Iowa, 561, it is said: "If the means of knowledge of the alleged fraud were equally open to both parties, the law will not interfere to protect the negligent; *   *   * and, if no device is used to put him off his guard, a party who, having capacity to read an instrument, signs it without reading, places himself beyond legal relief. If

the truth or falsehood of the representation might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglect to do so; and he is remediless." Applying these rules to the facts of the case, this court further said: "The defendant does not state that plaintiff used any artifice to prevent him from reading the contract, nor does he state that he was unacquainted with the English language, or that he couldn't read. In fact, no excuse whatever is given, except that he signed the contract relying on the representation of plaintiff as to its contents. This is inexcusable neglect, and the defendant must suffer the consequences of his own folly. The effect of such a rule as that claimed by appellant would be to render written contracts of but little practical value over those existing in parol only." This language is peculiarly applicable to the case before us. See, also, *McKinney v. Herrick*, 66 Iowa, 414; *Wallace v. Railway Co.*, 67 Iowa, 547; *Gulliher v. Railroad Co.*, 59 Iowa, 416; *Roundy v. Kent*, 75 Iowa, 662; *Railway Co. v. Cox*, 76 Iowa, 306; *Jenkins v. Coal Co.*, 82 Iowa, 618. These cases, and others which might be cited, are conclusive of the question of appellant's negligence, and clearly show that he is not entitled to the relief prayed in his cross-bill. The decree of the district court is right, and it is AFFIRMED.

LADD, J., took no part.