MARY A. GOODSON and VELMA JEAN KOSKI,
*Plaintiffs and Appellants,*

vs.

CHRISTY K. SMITH,
*Defendant and Respondent,*

and

PRESTON T. McAVOY, Trustee,
*Defendant and Respondent.*

CHRISTY K. SMITH,
*Plaintiff and Respondent,*

vs.

MARY A. GOODSON, VELMA JEAN KOSKI, and
M. J. KOSKI,
*Defendants and Appellants.*

(Nos. 2529, 2530; April 7, 1952; 243 Pac. 2d 163)

440

442

For the plaintiffs and appellants, in case No. 2529 and for defendants and appellants in case No. 2530, the causes were submitted upon the brief and also oral argument of Thomas A. Nicholas and Robert A. Burgess, both of Casper, Wyoming.

For the defendant and respondent, in case No. 2529 and the plaintiff and respondent in case No. 2530, the causes were submitted upon the brief and also oral argument of Robert S. Lowe of Rawlins, Wyoming, and Thomas M. McKinney of Basin, Wyoming.

Heard before BLUME, Chief Justice; RINER, Justice; and PARKER, District Judge.

## OPINION

BLUME, Chief Justice.

The controversy in these cases is, in the main, one as to the amount of oil and gas rights reserved in the lands here involved when the property was conveyed and

446

agreed to be conveyed to Christy K. Smith. The two
actions involve the identical transactions and were con-
solidated for trial. The first of these actions was
brought on December 31, 1948, by Mary A. Goodson
and Velma Jean Koski, hereinafter called plaintiffs or
appellants, against Christy K. Smith and Preston T.
McAvoy to cancel or construe a contract and deed in-
volving the following ranch property situated in Weston
County, Wyoming, and reservations for oil, gas and
minerals therein, as follows:

"The North Half (N½) ; the North Half of the South
Half (N½S½), the South Half of the Southeast Quarter
(S½SE¼) of Section Two (2) ; the North Half of the
Northeast Quarter (N½NE¼) of Section Eleven (11),
Township Forty-three (43) North, Range Sixty-six
(66) ; and West Half (W½) of Section Ten (10) ; the
South Half (S½) of Section Fourteen (14) ; Section
Fifteen (15) ; the Northwest quarter of the Northeast
Quarter (NW¼NE¼), the East Half of the Northeast
Quarter (E½NE¼) of Section Twenty-one (21) ; the
West Half of the Northwest Quarter (W½NW¼), the
South Half (S½) of Section Twenty-two (22) ; the
Northwest Quarter of the Southwest Quarter (NW¼-
SW¼), The South Half of the South Half (S½S½) of
Section Twenty-three (23) ; Section Twenty-six (26) ;
Section Twenty-seven (27) ; the Northeast Quarter of
the Northeast Quarter (NE¼NE¼) of Section Twenty-
eight (28) ; the North Half of the North Half (N½N½)
of Section Thirty-five (35), Township Forty-four (44)
North, of Range Sixty-six (66), West of the Sixth
Principal Meridian, containing Four Thousand One
Hundred Twenty (4120) Acres, more or less, according
to the Government Survey thereof; and all State school
land and individual land leases identified and owned
under lease by the Parties of the First Part, approxi-
mating Four Thousand (4000) acres, which includes
Federal leases under Taylor Grazing Act, also including
the leases covered by Land Utilization."

The allegations of the petition, slightly abbreviated,
are as follows: "Plaintiffs (that is to say appellants
herein) are the owners in fee simple of the property
here involved. On July 2, 1946, they made and executed

an oil and gas lease to the property to R. V. Allen. Mary A. Goodson's husband died on or about May 5, 1942, and she operated the ranch after that time. Preston T. McAvoy was her attorney. On or about October 7, 1946, defendant Christy K. Smith desired to buy the property. She informed him that she wanted to retain the oil and gas in the property forever. She agreed to meet him at the office of McAvoy the following day to reduce the contract to writing. Smith took other persons to the office of Preston T. McAvoy the following day. These persons were men of large interests and of great stature and political and other influence and experience. After Smith and others met in the office of Preston T. McAvoy these persons interrupted and contradicted Mary A. Goodson by loud and boisterous talking and interruptions, prevented plaintiff from completely expressing herself, and presumed to dictate the language to appear in the agreement for the sale of the land here involved and pretended that the language was the exact language agreed upon with Christy K. Smith at her ranch; defendant, Christy K. Smith, and associates overreached plaintiff. Plaintiff Goodson was then 54 years of age, and a widow, and was unfamiliar with legal documents and phraseology. Defendant deprived her of independent counsel and advice and employed plaintiff's regular attorney. There was necessity for her to return to her ranch. Upon the representation of defendant and associates that the paper was as agreed at her ranch, she signed the agreement for a warranty deed on October 8, 1946, but it does not represent the language of Mary A. Goodson of her free will. No deed for the transfer of the lands was made. The agreement entered into provided that upon the death of Mary A. Goodson one-third of the oil and gas and other minerals should pass to Christy K. Smith, that after twenty-five years another one-third would pass to Christy K. Smith leaving one-third of the oil and gas in the lands permanently

and forever in the plaintiffs. Plaintiffs learned that Preston T. McAvoy had in his possession a pretended deed which pretended to bear the signatures of plaintiffs for the purpose of transferring said premises to defendant, Christy K. Smith; that pretended deed does not contain the language stipulated in the agreement for a warranty deed." Plaintiffs prayed that the court cancel and rescind the contract, but if it should not be cancelled that the court interpret the effect thereof; that the lease to R. V. Allen be declared to be valid; that the defendant McAvoy be enjoined from delivering the pretended deed; that plaintiff, Mary A. Goodson, be decreed to retain an interest in the oil and gas under said lands forever.

Christy K. Smith filed an answer denying the allegations of the petition generally and setting forth that the contract for a deed was made and executed on October 8, 1946, and that a deed for the property, which was in conformity with the agreement, was executed subsequently on January 4, 1947.

The defendant, Preston T. McAvoy answered in similar language including the allegations that a warranty deed for the premises was executed on January 4. The execution of the deed was denied in the reply of plaintiffs.

Thereafter on January 3, 1949, Christy K. Smith brought an action against Mary A. Goodson and Velma Jean Koski and M. J. Koski, the latter's husband, substantially setting forth the allegations which he had mentioned in the answers to the first action and also asked for a portion of the money paid to appellants under the R. V. Allen lease. A copy of the agreement for warranty deed was set forth, and a copy of the warranty deed, executed pursuant to the agreement, was attached. He prayed the court as follows:

"Wherefore, the Plaintiff Prays that this Court make a declaration of the rights of the respective parties in

and to said lands; that it be ordered and decreed that the plaintiff is entitled to have said Warranty Deed so that he may place the same of record; that Plaintiff is entitled to have the Abstracts of Title for examination and to have full performance in accordance with the agreement of the parties and that the defendants be required to deliver said executed Warranty Deed to the Plaintiff with said Abstracts of Title to the lands covered thereby for examination by Plaintiff's attorneys and when said Plaintiff's attorneys have examined said title and if the title be found merchantable that then and in that event the Court order the payment of Eight Thousand Five Hundred Dollars ($8,500.00) in the hands of the Clerk of this Court to the said defendants and that the plaintiff have and recover from the defendants the sum of money or such sum of money in such amount as shall have been paid by the former lessees of said lands * * * which the plaintiff is justly entitled to receive and that the plaintiff have such other further and different relief as upon the trial hereof may be just and proper and recover his costs of suit herein expanded."

The answer of Mary A. Goodson and her associates contains substantially the same allegations as are contained in the action which she and Velma Jean Koski brought against Christy K. Smith and Preston T. McAvoy and stating among other things that the warranty deed theretofore mentioned is a spurious invention and in no way binding upon them.

The evidence shows that the property involved herein was for sale on and before October 7, 1946. Christy K. Smith and his uncle, John Christensen, went to the ranch in question about noon October 7, 1946, and it was then agreed that the purchase price of the property should be $35,000.00. The parties were to meet in the office of Preston T. McAvoy at Newcastle, Wyoming, on October 8, 1946, in order to reduce the contract to writ-

ing. Velma Jean Koski lived with her husband at Newcastle. Mrs. Goodson drove to Newcastle on October 8, 1946. During the afternoon she consulted with her banker for the period of about two or three hours and met Christy K. Smith, the latter's brother and father in the office of McAvoy about five o'clock in the afternoon of that day. The contract was dictated by Preston T. McAvoy into a dictaphone in the presence of the parties to this action. It was then transcribed by Betty Jean Fowler; a copy was given to each of the parties herein; it was thereupon read by McAvoy in the presence of the parties and it was thereupon signed by them respectively. The purchase price of the property, as before stated, was $35,000.00; $100.00 was paid on that day. The deferred payments were as follows: $10,400.00 on January 3, 1947; $8,500.00 to be paid on January 2, 1948; $8,500.00 to be paid on January 2, 1949; and the balance of $7,500.00 was to be paid by an assumption of the mortgage against the property held by a Federal Land Bank. Pursuant to agreement possession of the premises was given to Christy K. Smith on November 15, 1946. The evidence further indicates, although disputed by appellants, that an escrow agreement, making McAvoy the agent, was executed on January 3, 1947, signed by Mary A. Goodson, Velma Jean Koski and Christy K. Smith, and that the warranty deed to the property was executed by the appellants herein and the husband of Velma Jean Koski on January 4, 1947. All the payments agreed to be made by Christy K. Smith were made except the last payment of $8,500.00 which was tendered to the appellants herein and was deposited with the clerk of the court of Weston County, Wyoming. The escrow agreement and the warranty deed also were deposited with the clerk of the court to await the decision of the court in this case. It appears herein that the land involved in this action is equally owned by Mrs. Goodson and her daughter, Mrs. Koski, having

been inherited from the husband of Mrs. Goodson, excepting, however, a portion of the land, apparently called the Adkins land, which was bought by Mrs. Goodson subsequent to the death of her husband. That fact as far as we can see has no particular bearing in the case at bar, and is a matter solely between Mrs. Goodson and her daughter.

The dispute in the trial of the case was almost entirely confined to the question as to the amount of oil, gas and minerals reserved in the contract for warranty deed by appellants herein. The agreement in reference thereto will hereafter be set out in full. On February 28, 1951, the court entered judgment generally finding in favor of Christy K. Smith on all the issues in the case holding and declaring that the property in controversy is the property of Christy K. Smith. The court quieted title in him, subject, however, to an interest in the oil, gas and minerals under the land. The court held that one-third thereof is owned by Mary A. Goodson for life; one-third thereof by Velma Jean Koski for a term of twenty-five years, and that the remaining oil, gas and minerals under the land belongs to Christy K. Smith. The court gave judgment in favor of the latter in the sum of $266.66, being one-third of the money collected by Mary A. Goodson under the lease originally granted to Allen as heretofore mentioned, and directed an assignment of a State lease to be made to Smith which lease was a portion of the property agreed to be conveyed to Smith. The court further held that the agreement for a warranty deed and the warranty deed heretofore mentioned are valid and binding, and that each of those instruments was freely and voluntarily signed by the grantors and acknowledged in due form of law. The court also directed the deed to be delivered to Christy K. Smith and that the last payment under the contract of $8,500.00 be turned over to the appellant herein, after examination and approval of the abstract

of title. From the decree of the court entered in this case the appellants have appealed to this court.

## 1. RESERVATION OF OIL AND GAS INTERESTS.

The main contention herein, as heretofore stated, revolves round the question as to the extent of the reservation of oil, gas and minerals in favor of Mrs. Goodson. It is agreed by the parties herein that the warranty deed heretofore mentioned corresponds with the award made by the court, namely that one-third of the oil, gas and minerals belongs to Mary A. Goodson for life, one-third to Velma Jean Koski for twenty-five years and the remainder to Christy K. Smith. It is contended, however, by counsel for appellants that no additional consideration was given when the deed was executed, and that hence the provision in the deed must correspond with those in the agreement for a warranty deed. We may concede that to be true for the purpose of this case. It is further contended that the reservation for oil, gas and minerals in the deed does not correspond with the reservation in the agreement therefor. The reservation in the agreement for warranty deed is as follows:

"The parties of the First Part except and reserve, and the Warranty Deed shall provide for the exception and reservation, for and in behalf of Mary A. Goodson of an undivided one-third of the oil, gas and other minerals in and under said land, and the use of the surface of said lands to drill and mine for and take away the said minerals with the right of regress, ingress and egress for so long and during the life of the said Mary A. Goodson, the intent hereby being that at the time of her demise the same shall revert to the Second Party; *the parties of the First Part reserve and except,* and the Warranty Deed when given shall provide for the reservation and exception, *of all of the oil, gas and minerals in and under said lands,* and the use of the surface of said lands to drill and mine for and take away the same, with the right of ingress, regress, and egress, *an undivided one-third thereof for and in behalf of Velma Jean Koski for and during the term of twenty-five years (25)* from and

after the date hereof, to-wit: October 8th, 1946, and at the end of said twenty-five (25) years, the said undivided one-third interest shall revert to the Party of the Second Part." ( Italics supplied.)

Counsel for appellants contend that in view of the fact that one-third was to revert or pass to Smith after the death of Mrs. Goodson and one-third more after twenty-five years, therefore Smith would receive no rights in any oil, gas or minerals until either the death of Mrs. Goodson or after the expiration of twenty-five years, respectively. In their opening statement in this case, counsel expressed their construction thus: "The middle clause reserves all the oil and gas forever. The first clause is a limitation upon the word 'all' and reserves one-third to Mrs. Goodson for life, and the third clause is a limitation on another third, reserving one-third to Velma Jean Koski for twenty-five years, leaving one-third reserved to Mrs. Goodson and Mrs. Koski forever." (R. p. 6) Let us examine the reservation critically and dispassionately.

The clause in the second part of the reservation reading: "and the warranty deed when given shall provide for the reservation and exception," is a clause not intended to enlarge the meaning of what immediately precedes, but was intended to carry it into effect. So eliminating that clause, and reducing the second part of the reservation to its simplest terms, it reads: "The parties of the first part reserve and except * * * of all the oil, gas and minerals * * * an undivided one-third thereof for and in behalf of Velma Jean Koski for and during the term of twenty-five years." The English of this provision is flawless and clear. Some might consider the language somewhat stilted and put the proviso for the third before the other provision. Nevertheless, it is clear that one-third of all the oil, gas and minerals and nothing more is reserved by the second part of the reservation and that in favor of Mrs. Koski. The same thing is true if we read: "The warranty deed when given

is to provide for the reservation and exception, of all the oil, gas and minerals * * * an undivided one-third thereof for and in behalf of Velma Jean Koski."

To give any other construction to the reservation above mentioned and to give a predominant effect to the term "all" as counsel for appellants do, it is necessary for us to ignore the comma after "exception" and to strike "that the parties of the first part reserve" and read: "The warranty deed when given shall provide for the reservation and exception of all of the oil, gas and minerals" and stop there. The phrase "an undivided one-third thereof" might then be regarded as carved out "of all such oil, gas and minerals" in favor of Velma Jean Koski for twenty-five years. If that were the construction adopted, it would necessarily follow that under these provisions all the oil, gas and minerals would be perpetually reserved in favor of Mary Goodson, subject only to a third interest in favor of Mrs. Koski for twenty-five years. That, however, would be wholly inconsistent with the first clause which reserves for Mary Goodson only one-third for life. It would not alone be inconsistent to reserve to her such one-third on the one hand and all of it, as above mentioned, on the other, but such construction is also contrary to all the evidence in the case. Under the contract specific provisions were made for two-thirds—the major portion—of the oil and gas interests, namely one-third in favor of Mrs. Goodson for life, and another one-third for Mrs. Koski for twenty-five years. The term "all" appears in the clause, in the middle portion of the whole, which, as counsel for appellants contend, reserved all the oil and gas perpetually. But it is unreasonable to contend that after definite provisions were made for two-thirds of the whole, the smaller portion should then be designated by the term "all"—and that in the middle portion of the whole—a strange place in which to put such reservation of "all." Hence we think that that term bears only the

meaning which we have given it as above mentioned. It follows that the construction placed on the reservation clause by the trial court is correct.

·The construction placed upon the reservation clause in-the argument by counsel for appellants is not even sustained by the testimony of his clients. Mrs. Koski, in her testimony, claimed no more than a third interest in the oil, gas and minerals for a period of twenty-five years. Mrs. Goodson claimed only a third interest but contended that that interest was permanent and not for life. She conceded that Christy Smith had a third interest (Q. 74, 88, 101, and 213). The construction placed upon the reservation clause by this court and by the trial court is amply sustained by other evidence. The witness John Christensen testified that the term of years was agreed upon; that Christy would not buy the property unless the oil interest was to revert to him at a certain time; that a life estate was mentioned and that Mrs. Goodson said she was going to live longer than twenty-five years. The witness Christy Smith (Q. 876) testified that Mrs. Goodson wanted one-third interest for life, that she was going to live longer than twenty-five years. The witness Nels Smith testified as follows: (Q. 2110-2112) "Q. Tell the court what was said, if anything, with respect to reservations on the matter of the oil and mineral that was contained in and under the lands? A. That was very thoroughly discussed at that time. Q. Will you state what was said by Mrs. Goodson and what was said by Christy Smith with respect thereto? A. Well, the first thing that came up about it was when Velma Jean, as I remember it, came in and Mr. McAvoy asked her 'Velma Jean, is it correct that you want twenty-five years?', and she said, 'Yes it is.' And her mother spoke up and says, 'I won't accept that, I may live longer than that. I want life.' That was the discussion at that time." The witness Peter Smith (Q. 2270) said Mrs. Goodson "didn't like what Velma

Jean said when she came in that it was agreeable for her to take twenty-five years, and she said words to the effect that 'Velma Jean, I don't like the effect of your taking twenty-five years, because I want my oil interests for life, because when I am gone I don't care what happens, but I want that income as long as I live.' " The witness C. B. Simmons testified that he talked with Mrs. Goodson in June 1948 and that she then stated that she had a life estate in it and her daughter had twenty-five years. That was before the controversy herein arose.

It is quite apparent from what we have said that this court could not, under the rules as to the conflict of testimony and the credibility of the witnesses, do anything else but affirm the judgment of the trial court in connection with the question here discussed.

## 2. ESCROW AGREEMENT AND WARRANTY DEED.

Mrs. Goodson and Mrs. Koski denied that they ever executed the escrow agreement in evidence and the warranty deed. The execution of the escrow agreement was testified to by McAvoy, Christy Smith and Nels Smith. So, it is sustained by ample testimony. The execution of the warranty deed is shown by the testimony of McAvoy as well as by the certificate of acknowledgment attached thereto by Betty Jean Fowler and, hence, is supported by ample testimony. Moreover while this court does not pretend to be an expert in handwriting, the various signatures of Mrs. Goodson and Mrs. Koski in evidence, some of which are admitted to be correct, indicate to us that both the escrow agreement as well as the warranty deed were signed and executed by them. We might add that the warranty deed is of comparatively minor importance in this case. It appears herein that Christy Smith has fully complied with the agreement entered into by him. So that in any event even if the deed above mentioned had not been executed,

Mrs. Goodson and Mrs. Koski would have been compelled to execute one by the trial court to conform to the provisions of the contract.

## 3. FRAUD, DURESS, OR MISTAKE.

The petition of appellants was apparently drafted on the theory that the agreement for a warranty deed was obtained through fraud, duress, or possibly mistake. But the contract was signed by the parties, and it does not appear that Mrs. Goodson's hearing was bad, or that she was unable to read. Judging from the record, she is an intelligent woman, and her handwriting is excellent. In the case of Moffett, Hodgkins & Clarke Co. v. City of Rochester, 91 F. 28, (C.C.A. 2nd Circuit), the court stated: "A court of equity cannot undertake to make a contract for parties which they have not made themselves, and would equally transcend its just powers by compelling a party to relinquish the fruits of a contract which he has honestly made, and in which there is no taint of wrong to affect his conscience. The recision or cancellation of a contract is certainly as drastic an interference with its provisions as a modification of it. The consequences may be equally or even more injurious to the party who is deprived of the benefit to which he is entitled by it." We held in Bushnell v. Elkins, 34 Wyo. 495, 502; 245 P. 304, that: "When parties have deliberately put their engagements in writing, and such writing is complete on its face and is certain and definite as to the objects of their engagement, it is conclusively presumed that the whole contract of the parties and the extent and manner of their undertaking was reduced to writing, and cannot be contradicted, altered, added to or varied by parol or extrinsic evidence." It is true, as pointed out in the same case, that a contract may be cancelled for fraud, duress or mistake, but the burden to prove these factors is upon the party asserting it. It is said in 3 Black on Rescission

458

and Cancellation, 1618, § 677, that " a grantor who alleges that his deed is invalid because he did not understand its contents must sustain the burden of proving that fact." In § 679 of the same work, it is said: "It is a presumption of law that when a person affixes his signature to a written instrument, being sui juris, in possession of his mental faculties, and able to read, he is acquainted with its nature and terms, and gives his intelligent consent to the contract which it embodies. Hence when he seeks to impeach the instrument on the ground that it does not contain the whole contract, or that it contains more than the contract, or that he was deceived or misled as to its purport or provisions, the burden of proof is upon him to establish these contentions, and not upon the defendant to show that the contract or conveyance was understood and approved." In § 682 of the same work, it is said: "The cancellation of a written instrument is the exercise of an extraordinary power by a court of equity, and to justify it the grounds of cancellation must be established by clear, convincing, and well-founded evidence." In § 683 of the same work, the author states: "To justify a court in ordering the recission of a contract or the cancellation of a written instrument, on the ground of fraud or false representations, it is not sufficient that the evidence in support of that allegation should raise a suspicion, or indicate a probability, that a fraud has been perpetrated, but it must be decisive and thoroughly convincing. This is the general purport of the authorities, although the courts, in describing the measure of proof required, have used varying terms. Thus, it is often said that fraud or false representations must be 'clearly' proved, or established by 'clear' evidence, or that the court will not act except in a clear case." In 12 C.J.S., 1060, § 71, it is stated: "It is generally held that the cancellation of an executed contract is an exertion of the most extraordinary power of the court of equity, which will not be exercised

except in a clear case and on strong and convincing evidence. This principle has been enunciated and followed in determining the degree of proof required to secure the cancellation of an instrument on the ground of fraud, forgery, mistake, duress or undue influence." In McDaniel v. Parish, 4 App. D. C., 213, 216, the court stated: "Suspicious circumstances are not the equivalents of proof; and unless all the facts and circumstances of the case, when taken together, are strong enough to generate a clear rational conviction of the existence of the fraud charged, that conclusion ought not to be adopted which will destroy a prima facie good title to property, and blacken the characters of the parties concerned."

In connection with the question of fraud and duress, counsel point out that Mrs. Goodson was tired; that when the agreement for warranty deed was drafted, it was late in the evening; that there was present a former Governor of this State; that men of large stature were present; that there was smoke in the room; that there was a good deal of talking in the room causing confusion. Attention is even called to the fact that Christy Smith conferred separately with the married daughter of Mrs. Goodson. Counsel have not cited us to any cases in which such facts have been held to constitute fraud or duress, and we venture to say that none can be found to that effect. Any finding by the jury to the contrary would have been set aside. The allegation that plaintiffs were overreached is a pure conclusion and does not aid them. The allegation that she was deprived of independent advice, too, is mere conclusion. That allegation, and the further allegation that respondent employed plaintiffs' regular attorney will be considered hereafter. Neither of them are supported by the evidence.

Nor, we think, has any mistake been shown. The main evidence on that point is the evidence of Mrs.

Goodson that she signed the agreement for a warranty deed, because she had to get back to the ranch, and that she felt confident that the agreement contained the reservation as agreed to on the ranch, namely, that she was to retain a third interest in the oil and gas perpetually.

In that connection it is stated in 1 Black on Rescission and Cancellation, 402, § 131, as follows: "A party cannot have relief against a contract or other obligation into which he has entered in ignorance of material facts, or under a mistake as to such facts, where no fraud or imposition was practiced upon him, and his ignorance or mistake is entirely due to his own negligence or lack of proper attention, or to the failure to exercise such reasonable care and thoughtfulness as may be expected in business transactions from men of ordinary care and prudence. Thus, for example, one who is too careless or too confiding to acquaint himself with the contents of a written instrument presented to him for his signature * * * cannot ordinarily base a claim to relief in equity on the fact that he was mistaken as to its identity, terms, or purport." In 9 Am. Jur. 379, § 34, it is stated: "Negligence on part of the compainant (complainant), contributing to the mistake, will also prevent the securing of relief; the cases are practically unanimous in holding that mistake which results from failure to exercise that degree of care and diligence which would be exercised by persons of reasonable prudence under the same circumstances will not be relieved against. This rule is particularly applicable in cases where the mistake was due to the party's failure to read * * * the paper he was executing." The Iowa Supreme Court in Reid, Murdock & Co. v. Bradley, 105 Iowa 220, 74 N.W. 896, aptly stated as follows: "It is a general rule that negligence is an insuperable objection to relief in equity on the ground of mistake. In the case of Glenn v. Statler, 42 Iowa 107, we quoted with approval the rule an-

nounced by Judge Story in his work on Equitable Jurisprudence (section 146) as follows: 'It is not, however, sufficient in all cases, to give the party relief, that the fact be material; but it must be such that he could not by reasonable diligence get knowledge of when he was put upon inquiry. For if, by such reasonable diligence, he could have obtained knowledge of the fact, equity will not relieve him, since that would be to encourage culpable negligence.' Again, in the case of McCormack v. Molburg, 43 Iowa 561, it is said: 'If the means of knowledge of the alleged fraud were equally open to both parties, the law will not interfere to protect the negligent; * * * and, if no device is used to put him off his guard, a party who, having capacity to read an instrument, signs it without reading, places himself beyond legal relief. If the truth or falsehood of the representation might have been tested by ordinary vigilance and attention, it is the party's own folly if he neglect to do so; and he is remediless.' Applying these rules to the facts of the case, that court further said: 'The defendant does not state that plaintiff used any artifice to prevent him from reading the contract, nor does he state that he was unacquainted with the English language, or that he couldn't read. In fact, no excuse whatever is given, except that he signed the contract relying on the representation of plaintiff as to its contents. This is inexcusable neglect, and the defendant must suffer the consequences of his own folly. The effect of such a rule as that claimed by appellant would be to render written contracts of but little practical value over those existing in parol only.' "

When Mrs. Goodson testified that nothing was said about her having a life estate in a third interest in the oil, gas and minerals in the land, she was quite obviously mistaken. The agreement for a warranty deed alone— aside from all the testimony contradicting her—shows that her memory was faulty. She, herself, admitted

that the agreement for warranty deed was dictated by McAvoy in her presence; that she received a copy of it when transcribed; that she heard it read; that, as she testified, "glanced at it"; that she signed it; that it took 3½ hours from the time when she and Christy Smith and others went to McAvoy's office until the agreement was finished, and that time, we think, shows that it was not finished in haste. The first part of the reservation of oil, gas and minerals clearly and unequivocally left her only a third interest for life, so that if she had had any doubt as to whether or not more than that was reserved she would not have, as she testified, left her copy of the contract unread after leaving McAvoy's office for some twenty-one months, and would not have admitted that she had only a life interest as mentioned only a month previous to the time that the controversy herein arose. We see no room or basis for any contention of mistake.

## 4. MRS. GOODSON'S HOMESTEAD RIGHT.

Counsel for appellants argue that Mrs. Goodson's homestead right was not properly conveyed. It is true that she acquired a homestead right when her husband died in 1942. § 3-4503, Wyo. Comp. Stat., 1945. That homestead right became her absolute property with some limitation. § 6-1504, Wyo. Comp. Stat., 1945. It would seem, however, that she is a little late in raising the question, above mentioned, for the reason that she abandoned her homestead when she gave voluntary possession of the property to Christy K. Smith on November 15, 1946, and left the premises without any intention to return. A homestead right may be abandoned. Arp v. Jacobs, 3 Wyo. 489, 27 P. 800, and see annotation to that case. See also 40 C.J.S. 639, 778, which in the last citation states: "It is very generally held that the widow's right of homestead acquired by survivorship may be lost by abandonment * * * To constitute an

abandonment, the surviving wife must remove from the homestead with intent not to return to it as a place of residence, or must, after removing therefrom, form such intention."

However that may be, Mrs. Goodson, both in the contract for the warranty deed and in the deed itself, waived her homestead right. Thus in the contract for the warranty deed, it is stated: "It is agreed and understood that there is included herein on behalf of Mary A. Goodson and Velma Jean Koski, the release and waiver of the rights of homestead and exemption laws of the State of Wyoming." In the acknowledgment, it is stated that the grantors voluntarily executed the contract "including the release and waiver of the right of homestead; the said Mary A. Goodson, a widow, and the said Velma Jean Koski, wife of M. J. Koski, having been by me first fully apprised of their rights and the effect of signing and acknowledging said instrument." Similar provisions are contained in the deed. Mrs. Goodson testified that no notary asked her about release of her homestead right.

This court held in Rowray v. Casper Mut. Building & Loan Ass'n., 48 Wyo. 290, 45 P. (2d) 7, where a great number of authorities are reviewed, that evidence, to impeach a notary's certificate of acknowledgment, must be cogent, clear, and convincing. See also 66 C.J.S. 619. The Supreme Court of Nevada reviewed the subject at length in Picetti v. Orcio, 57 Nev. 52, 58 P. (2d) 1046, and in the opinion on rehearing in that case in 57 Nev. 65, 67 P. (2d) 315. Quoting from the syllabi in 67 P. (2d) 315, it is stated: "Presumption in favor of notary's certificate of acknowledgment, whether statutory or not, can only be overcome by clear, cogent, and convincing evidence amounting to a moral certainty. * * * Uncorroborated testimony of interested party is not generally such clear, cogent, and convincing evidence as is required to overcome presumption in favor of notary's

certificate of acknowledgment." It is true that McAvoy testified that he administered an oath to the parties at the time when they executed the instrument. The meaning of that is not clear. That testimony does not contradict the recitals in the certificate of acknowledgment. A simple acknowledgment is, of course, different from the ordinary oath. However, an oath might well embody all the elements of a simple acknowledgment, and the administration of the oath as mentioned would seem to merely show that more than ordinary care was taken in the execution of the instruments in question so that the parties would fully understand just what they were doing.

Counsel for appellants lay particular stress upon the point that Mrs. Goodson was not apprised of her own homestead right. They asked her several times as to whether or not she had been so apprised. She answered in the negative. Counsel rely upon the provision of § 66-209, Wyo. Comp. Stat., 1945, which provides as follows: "Every owner or occupant of a homestead as established herein may voluntarily sell, mortgage, or otherwise dispose of or encumber the same; provided, that every such sale, mortgage, disposal or encumbrance shall be absolutely void, unless the wife of the owner or occupant of such homestead, if he have any, shall freely and voluntarily sign and acknowledge the instrument of writing, conveying, mortgaging, disposing of or encumbering such homestead; and the officer taking her acknowledgment shall fully apprise her of her right and the effect of signing and acknowledging such instrument." The section was modified by the Legislature of 1949. As it stood, however, at the time of the contract in 1946, it was necessary to apprise a *wife* of the right of homestead. It did not provide that a *widow* who had no husband should be so apprised. Thus it was held in Bailly v. Sisseton Farmers' State Bank, 35 S. D. 122, 150 N.W. 942, that a statute "making a conveyance by

the owner of a homestead invalid, unless both husband and wife join in the conveyance, does not apply to a conveyance by a surviving wife of the interest she acquired by the descent statute from her deceased husband, and a conveyance by her is effective to convey an interest in the homestead property." We think that the provision in § 66-209, supra, as to apprising a wife has no application to a widow. The intention evidently was that she should be protected against any undue influence on the part of her husband. We think accordingly that the contention here made is not well taken.

## 5. PROFESSIONAL CONDUCT OF ATTORNEY.

Many pages of the brief of counsel for appellants are devoted to an attack on the professional conduct of Preston T. McAvoy who drafted the agreement for warranty deed and the deed itself. It would take us too far afield to refer to all the points contained in the brief in this connection. In our judgment, the attack is unwarranted. It is largely based on the claim that Mrs. Goodson was a defenseless woman unaccustomed to the ways of the world. The record before us shows she is intelligent, has a will of her own, and knew pretty clearly what she wanted. She had had the land for sale for some time and made Christy Smith come to her terms. McAvoy had been her attorney in settling the estate of her deceased husband and perhaps in some other matters. These matters had been finished, and the relationship of attorney and client had accordingly been terminated. He was not her attorney when the agreement in question was drafted. Mrs. Goodson on account of her past relationship with McAvoy insisted that it would be drafted in his office since she trusted him. There is no indication whatever that the latter had any motive for drawing any instruments which did not contain the wishes which she expressed to him. We cannot understand why he or any other attorney should have

refused to draft these instruments in accordance with the agreement of the parties. We surmise that the main trouble herein arose by reason of the fact that a reservation of an interest in oil for life did not prove as satisfactory as a reservation for a definite period of time. McAvoy testified: "The discussion came about on the life estate. I went to a lengthy, extensive explanation with Mrs. Goodson. I told her that when she died this oil, gas and mineral rights and estates would go to Christy, * * * and that Velma Jean at the end of twenty-five years, hers would go back to Christy at the end of twenty-five years. * * * And I should say that in my judgment the parties had come to an opinion and an accord." Mrs. Goodson had ample opportunity to consult him so as to get independent advice, to which counsel refer, before she and the others went to his office had she wished to do so. Instead of doing so she consulted her banker, who, or some one interested in oil and gas production, perhaps could have given her better independent advice and could have told her much better than McAvoy as to whether or not she acted wisely in retaining only a life estate in one-third of the oil, gas and minerals in the land. It was a matter of business and not a legal matter. Much is said in the brief concerning certain papers which McAvoy had in the so-called Goodson file, consisting mainly of office copies. Counsel for Mrs. Goodson wanted these papers. We cannot see why these should have been delivered up as demanded. Nor does it appear that they were relevant to the controversial issues herein.

After the controversy herein arose, McAvoy wrote to the present counsel for Mrs. Goodson and Mrs. Koski that in view of the fact that he was an escrow agent for both parties, he would take a neutral attitude in the case. It is insisted that he should have continued to do so; that he should not have appeared as counsel in the case for Christy Smith, and that the court should not

have permitted him to do so. However ,after the letter above mentioned was written, Mrs. Goodson and Mrs. Koski virtually accused him and Betty Jean Fowler of forging their names to the escrow agreement and to the warranty deed. This court would hardly be justified in saying that an attorney at law thus accused is helpless and defenseless and should be compelled to take a neutral attitude in such a situation, without resorting to every reasonable means to defend his honor and his integrity. The cases cited by appellants in this connection are not, we think, in point. Take, for instance, the case of Wingilia v. Ashman, 241 Mich. 534, 217 N.W. 909. In that case an attorney at law had drafted a contract for the plaintiff, and had been consulted by him in connection with the litigation subsequently arising out of it. He then appeared for defendant, and he was held disqualified from doing so. In the case at bar, McAvoy drafted the contract in question here by the consent and acquiescence of all the interested parties and for all of them. The matter was finished and out of the way for some twenty-one months. Appellant did not consult him in reference to the present litigation. On the contrary she employed another attorney. While we do not attempt to determine the various circumstances under which an attorney may or may not appear for a party in a suit, we think it clear that the trial court did not err in permitting McAvoy to appear in this case. See Price v. Grand Rapids and Indiana R. R. Co., 18 Ind. 137.

## 6. PAYMENTS TO JOINT CREDITORS.

The payments agreed to be made under the contract here in question were all made to Mrs. Goodson, except that the last payment of $8,500.00 was deposited with the clerk of the court. No payments were made to Mrs. Koski. Hence, it is argued by counsel for appellants that the contract is without consideration so far as Mrs.

Koski is concerned and that the judgment accordingly must be reversed as to her. Counsel are mistaken. Mrs. Goodson and Mrs. Koski were joint creditors under the contract in question. We decided the point here involved in the case of Hill v. Breeden, 53 Wyo. 125, 136; 79 P. (2d) 482. We said in that case: "When a contract is payable to two or more parties jointly, as in the case at bar, payment may be made to either of them. * * * If they choose to have it payable to them jointly, they ordinarily manifest thereby that they have mutual confidence in each other. The respective interests which they have therein may be equal or unequal. And so it is said that 'the obligor is not bound to hunt up each joint obligee and pay him his distributive share.' * * * Of the disadvantages which this entails for the co-obligee he cannot complain, since 'it was his own act to enter into a contract with another who would have the right to control it.' " The contention here made is accordingly overruled.

## 7. DEMAND FOR A JURY.

Appellants demanded a jury which was refused. We think the action brought by Christy Smith against the appellants is an action for specific performance and no trial by jury may be demanded in such case. 50 C.J.S. 753, § 36. The questions involved in the action brought by the appellants against Christy Smith and Preston T. McAvoy are two-fold. On one phase of the case appellants ask for construction of the contract here in question. In our view, as heretofore stated, the contract is not ambiguous but its meaning is clear. It is stated in 17 C.J.S. 1279, § 616: "Ordinarily, the construction or legal effects of a contract must be determined by the court as a question of law." In 17 C.J.S. 1287, § 617, it is said: "The construction of an ambiguous contract is a question of law for the court where the ambiguity can be clarified by reference to other parts of the con-

tract, or where the ambiguity arises by reason of the language used and not because of extrinsic facts." If the contract in question here can be said to be ambiguous in one part, it is clarified by reference to other parts. Hence no question of fact is involved in connection with the construction of the contract in question. Aside from that phase of the case, appellants asked that the contract between the parties be set aside by reason of alleged fraud and duress and mistake. While it seems that courts are not altogether unanimous in holding that no jury trial can be demanded in such a case (See 3 Black on Rescission and Cancellation (2d), § 675), the general rule seems to be that none may be demanded. Thus it is said in 50 C.J.S. 746, § 31: "A suit to cancel or set aside or to reform an instrument is within the jurisdiction of equity, and in such suits there is no right to a jury trial." That is held to be the rule for instance in Proctor v. Arakelian, 208 Cal. 82, 280 P. 368; Winkler v. Korzuszkiewicz, 112 Kan. 283, 211 P. 124; Reddy v. Graham, 110 Kan. 753, 205 P. 362. In 9 Am. Jur., 402, §64, it is stated: "An action to cancel or rescind an instrument or contract is an equitable remedy, triable in equity only. Consequently, there is no right to a jury trial."

Counsel for appellant contend however, that this case involves an action under our declaratory judgment act, and that we held in Holly Sugar Corp. v. Fritzler, 42 Wyo. 446, 474; 296 P. 206, 214, that a party is entitled to a jury trial in such a case. In calling the action one under the foregoing act, counsel grasps at one statement in the prayer of the action brought by Christy Smith, namely the first sentence thereof reading: "wherefore the plaintiff prays that this court make a declaration of rights of the respective parties." We hardly think that that sentence alone makes the action necessarily one under the foregoing legislative act. But assuming otherwise, we hardly think that what we said in the Holly Sugar Corp. case can be construed as meaning that a

jury trial is a matter of right in all such cases. Whatever we said on that point was in connection with the question as to whether the action in that case was maintainable under the foregoing legislative act. Reference to a jury trial was merely incidental. No jury had been demanded in that case so that reference to the point was hardly necessary. It seems to be generally held under recent decisions of the courts that the right to a jury trial in cases under the act aforesaid depends on the nature of the case. Pacific Indemnity Co. v. McDonald, 107 F. (2d) 446; Linahan v. Linahan, 131 Conn. 307, 39 A. (2d) 895; Webb v. Clatsop County School District No. 3, 188 Ore. 324, 215 P. (2d) 368; Employers Liability Assur. Corp. v. Tibbetts, 96 N. H. 296, 75 A. (2d) 714; 62 Harvard Law review 834; Borchard, Declaratory Judgments (2d) 400. In the first of these cases, the court stated: "While the subject is not without difficulty * * * it is clear we think that issues of fact are neither legal nor equitable but that their disposition by the court or jury, as the case may be, depends upon the setting in which the issues are framed. If the issues are raised in an action at law the right to a jury trial obtains and if raised in an action in equity it may be determined by the court without a jury, or the court may call to its aid a jury whose verdict is advisory." Aside from all that there were but two matters upon which a jury trial could conceivably have been had. One was the question of the execution of the escrow agreement and warranty deed. As heretofore indicated that would have been unimportant, since Christy K. Smith was entitled to a deed, in conformity with an agreement therefor, in any event. The other matter was that of fraud, duress or mistake. As heretofore shown, there was not sufficient evidence in the case to have justified the court in submitting these questions to the jury. Counsels' contention in this connection must accordingly be overruled.

A great deal of evidence was introduced—at first on the part of appellants—in connection with the fact that there was a good deal of excitement in June and July 1948, in connection with oil and gas development in the region in which the land involved herein is situated, and that various contracts were entered into, or were sought to be entered into, by appellants. It is somewhat difficult to discover the relevancy of these transactions and the conditions in 1948 to the issues in this case. Appellants perhaps claim that this oil development shows the reason why Mrs. Goodson would reserve more than one-third interest for life when she made the contract in 1946. On the other hand it may be said that it is much more likely to show, if anything at all, the reason why Mrs. Goodson sought to have the contract of 1946 interpreted in terms different from those shown by the agreement for warranty deed and the deed itself.

Other matters are mentioned in the brief of counsel for appellants. But this opinion is already too long. Suffice it to say that in our judgment none of these matters are of sufficient importance so as to deserve an argument thereon herein. We think that appellants had an eminently fair trial. We are unable to find any reversible error in the record and the judgment of the trial court must accordingly be affirmed. It is so ordered.

*Affirmed.*

RINER, J., and PARKER, District Judge, concur.

## ON PETITION FOR REHEARING
May 27, 1952, 244 P. 2d 805

473

In support of the petition for rehearing, there was a brief for the appellants by Thomas A. Nicholas and Robert A. Burgess, both of Casper, Wyoming.

Heard before BLUME, Chief Justice; RINER, Justice; and PARKER, District Judge.

474

## OPINION ON REHEARING

BLUME, Chief Justice.

A petition for rehearing has been filed in the foregoing case. We considered what we thought to be the vital and important questions in the case fully in the original opinion. We stated at the end of that opinion that it was long; that other matters had been mentioned in the brief of counsel for appellant, but that none of them were of sufficient importance to deserve argument. We still think so. However, counsel had the right to file a petition for rehearing under our rules notwithstanding what we said, and freedom of thought and of expression is one of the heritages in our country, and far be it from us to desire to stifle that. So we have carefully read the brief in support of the petition. In the main, the various pionts heretofore decided have not been questioned, but counsel seem to think that on account of certain matters which they now argue the case ought to be reversed. We shall, in deference to counsel, briefly touch upon some of the matters argued in the present brief.

Counsel complain that Christy Smith was not compelled to answer interrogatory 9 submitted by the plaintiffs. That interrogatory was as follows: "State what consideration was paid in connection with said deed, apart from the general consideration mentioned in the alleged agreement." Respondent answered that plaintiffs were as well informed on that subject as he. That was obviously true. The interrogatory was submitted on the theory of appellants that the warranty deed in evidence enlarged the rights of respondent which were granted to him in the agreement for that deed. We have shown in the original opinion that that was not true. The foregoing point becomes accordingly wholly academic, and no possible prejudice resulted from the fact that the interrogatory was not fully

answered. Counsel say that a large part of the time of the trial was lost because of respondent's answer. It should not have been. If it was, that was due to the wrong theory of counsel for appellants. Moreover, losing unnecessary time in a trial of a case cannot, of course, be ground for reversal of the judgment. Furthermore while appellants assigned the ruling of the court in connection herewith as error, we do not find that it was argued at the original hearing, either in the brief of appellants or on oral argument. The assignment of error was accordingly waived. It is quite apparent that counsel took the same view of the matter originally as we do now.

Counsel say in their brief that the preliminary agreement at the ranch was important. Just what conclusion they draw from that fact is not clear to us. In any event whatever the agreement at the ranch may have been, it was superseded by a written contract subsequently drawn. Appellants had a copy of it; it was read to them and they signed it. Courts do not easily overturn contracts which are voluntarily entered into by the parties as was true in this case according to the finding of the trial court.

Counsel again argue the question that there were numerous leading questions asked in the trial of this case by counsel for Christy Smith. The control in connection with leading questions in a case is largely within the sound discretion of the trial court. 70 C.J. 524. Upon examination of the record, we do not think that appellants were in any way prejudiced in connection with this matter, particularly in view of the fact that the case was tried by the court without a jury.

As a part consideration for the contract Christy Smith assumed and agreed to pay to the Federal Land Bank a mortgage in the sum of $7500. The evidence shows that the mortgage is satisfied and released. Counsel say that the record shows that Christy Smith paid

only $7414.79. While it is hard to believe that the Federal Land Bank would agree to discharge a loan of $7500 for $7414.79, if in fact it did so, that was a matter between the bank and Christy Smith and does not concern appellants.

It is argued that in view of the fact that the trial court failed to make a finding as to the meaning of the language of the contract, this court had no right to search the record and determine the meaning thereof. We think counsel are mistaken. As far as we can see, the finding of the trial court corresponds to what we said on the subject in the original opinion. True, the trial court did not use the same language we did, but the substance of its finding was the same.

Counsel say the court did not make any finding of fact or conclusion of law on fraud, duress or mistake. We do not find any specification of error in that connection, nor was the point argued, if we recollect rightly, at the time of the original hearing. Moreover, we think counsel are in error. The court found that appellants voluntarily signed, executed and acknowledged the agreement for the warranty deed involved in the case at bar. It further found: "That each of said instruments is sufficient in law, binding upon the parties thereto, valid and subsisting, and not void and not voidable by reason of any matter or thing within the issues of the causes of action herein and the evidence adduced in support thereof." While the court did not use the terms fraud, duress and mistake, the substance of its finding is that the contract was free from fraud, duress and mistake.

Counsel have again devoted a good deal of their present brief to the professional conduct of one of the counsel for respondent. We think that what we said on that subject in the original opinion is all that we should say thereon. Counsel say that we were wrong when we stated that the professional conduct of counsel for re-

spond'ent was "attacked." They disclaim any attack. However when you hit a man, and then disclaim that you hit him, the disclaimer is rather valueless. That is about the situation here.

We find no ground for a rehearing herein, and the petition therefor is, accordingly denied.

RINER, J. and PARKER, District Judge, concur.