Argued January 5, affirmed in part; reversed in part
February 28, 1950

# WEBB ET AL. *v.* CLATSOP COUNTY SCHOOL DISTRICT No. 3 ET AL.

215 P. (2d) 368

*M. E. Reynolds,* of Astoria, argued the cause and filed a brief for appellants.

*Thomas T. Chave, Jr.,* of Seaside, argued the cause and filed a brief for respondents Clatsop County School District No. 15 and Gearhart School District No. 15, Consolidated.

HAY, J.

This was a proceeding under the Uniform Declaratory Judgments Act (sections 6-601 to 6-616, O. C. L. A.), in which the plaintiffs sought a declaratory judgment to determine the validity of a special school

election, by virtue of which Clatsop County School District No. 3 and Clatsop County School District No. 15 were purported to have been consolidated under the name of Gearhart School District No. 15, Consolidated. The plaintiffs are registered voters of Clatsop Plains Precinct and of School District No. 3, in Clatsop County, Oregon. The defendants, in addition to the three school districts above mentioned, are the members of the Clatsop County School District Boundary Board and the members of the election board of said School District No. 3. The complaint sets forth, in three separate causes of action, the existence of controversies alleged to have affected the validity of said election. These may be summarized as follows:

First Cause of Action: The posted notices of the special meeting at which the election was to be conducted stated that such meeting would be held at the school house in District No. 3, on May 2, 1949, at 7:00-9:00, p. m. Contrary to such notices, the election board opened the polls for said election at 6:00 o'clock, p.m., and closed them at 8:00 o'clock, p.m. Between the hours of 8:00 and 9:00 o'clock, p.m., on said day, plaintiff Claude Huckleberry, a registered voter, attended at said school house for the purpose of voting in such election, but found the polls closed. Had the polls been open, said plaintiff would have voted against the proposed consolidation of school districts, whereby the result of the election would have been 38 ballots for consolidation and 38 ballots against consolidation, and the proposed consolidation would have been defeated.

Second Cause of Action: At said election, plaintiff Harry Webb, a registered voter, presented himself before defendant John S. Dellinger, chairman of the

meeting, and was told that he, Webb, did not have the right to vote. Dellinger thereupon failed to administer to Webb the statutory oath touching his qualifications as an elector, and failed to interrogate him, under oath, respecting his place of residence and length of residence in School District No. 3. If, after taking the oath and being interrogated, Webb had been allowed to vote, he would have voted against the proposed consolidation of school districts, which vote would have caused the result of the election to have been 38 ballots for consolidation and 38 ballots against consolidation, and the proposed election would have been defeated.

Third Cause of Action: Seven named persons, residents and inhabitants of Clatsop Plains Precinct aforesaid, presented themselves at the polling place in said special election, and had their right to vote therein challenged. Defendant John S. Dellinger, chairman of said meeting and election, failed to administer to such persons an oath touching their qualifications as electors, and failed to interrogate them, under oath, respecting their places of residence and length of residence in the district. Said persons were denied the right to state, under oath, their qualifications for voting, and were denied ballots in said election. Defendant Marjorie Reith, clerk of said election, failed to list upon the poll books the names of said persons whose right to vote was denied. The failure of said clerk to record the votes of said persons as rejected rendered the election illegal and void.

The defendant Clatsop County District Boundary Board moved for an order to dismiss plaintiffs' complaint and the three causes of action therein, as against said defendant, upon the following grounds: (1) that the allegations of the complaint were insufficient to

constitute a cause of suit or action against said defendant; (2) that said defendant was not a necessary party to the determination of the validity of said election; (3) that said defendant, having, on the basis of the election returns, declared that the two school districts had been consolidated, had performed its duty and had no further jurisdiction in the premises.

The court allowed said motion as to the first and third causes of action, but denied it as to the second.

Defendant Clatsop County School District No. 15 demurred to each cause of action, on the ground that it did not state facts sufficient to constitute a cause of action or cause of suit. The court sustained the demurrer as to the first and third causes of action, but denied it as to the second.

Thereafter, defendant Clatsop County School District No. 15 answered the plaintiffs' second cause of action by general denial. For a further and separate answer, said defendant alleged facts tending to show that plaintiff Harry Webb was not a legally registered voter at the time of said election, and was not entitled to vote therein. Defendant Clatsop County District Boundary Board, notwithstanding the fact that, as to it, the first and third causes of action had been dismissed, answered the whole complaint by general denial, except for certain formal admissions.

No appearance was made by Clatsop County School District No. 3, or by any of the natural persons named as defendants, either in their individual capacity or otherwise.

The case was tried by the court without a jury, and, at the conclusion of the trial, the trial judge delivered his opinion orally from the bench, whereby he found that the plaintiffs had failed to sustain the allegations

of their complaint, and concluded that the election in question was legal and valid in all respects. Accordingly, on July 22, 1949, the court entered a judgment declaratory of his said findings, adjudging that the consolidation of School District No. 3 and School District No. 15 was legal and valid, and dismissing plaintiffs' complaint.

From this judgment, plaintiffs have appealed.

The errors assigned are: (1) the court's failure to overrule the demurrer of School District No. 15 to plaintiffs' first and third causes of action and to deny the motion of Clatsop County District Boundary Board to dismiss plaintiffs' first and third causes of action, and (2) the entrance of the declaratory judgment declaring that the consolidation of the two school districts was legal and valid.

It is suggested by respondents that there was no showing that a justiciable controversy existed between the parties and, therefore, that there was no foundation for a declaratory judgment. *Oregon Creamery Mfgs. Assn. v. White,* 159 Or. 99, 107, 78 P. 2d 572.

■ The complaint clearly shows that the plaintiffs were seeking relief under the declaratory judgments act, and concludes with an appropriate prayer in that regard. In essence, the action sought to determine the validity of a special school election, and the three separate causes of action set up, as grounds of controversy, irregularities which were alleged to have been committed by the election officials in the conduct of the election, and which, if so committed, affected the result thereof. Issue was joined by answer; the existence of the alleged controversies between the parties respecting the validity of the election was admitted; and we think that the pleadings in that regard were sufficient.

Borchard, Declaratory Judgments, 2d ed., p. 868; Anderson, Declaratory Judgments, section 386; 16 Am. Jur., Declaratory Judgments, sections 45 and 64.

■■ A justiciable controversy having been stated, the test of the sufficiency of the complaint was not whether or not it showed that plaintiffs were entitled to a declaratory judgment in accordance with their theory, but whether or not they were entitled to any declaration at all, even if they were mistaken in their theory. *Cabell v. Cottage Grove,* 170 Or. 256, 261, 130 P. 2d 1013, 144 A. L. R. 286; Anderson, Declaratory Judgments, section 101, p. 271. Moreover, even though the plaintiffs had not been entitled to a favorable declaration upon the facts stated in their complaint, if the complaint stated a justiciable controversy between the parties the general demurrer thereto should have been overruled, and the controversy should have been determined by a judicial declaration. *Central Or. Irr. Dist. v. Deschutes Co.,* 168 Or. 493, 507, 124 P. 2d 518; *Cabell v. Cottage Grove,* supra.

■■ Demurrer may be used to test the sufficiency of the complaint in these cases, if it is vulnerable upon any of the statutory grounds of demurrer. *Fox v. Title and Trust Co.,* 129 Or. 530, 534, 277 P. 1003; *Central Or. Irr. Dist. v. Deschutes Co.,* supra; *Cabell v. Cottage Grove,* supra; *Paron v. Shakopee,* 226 Minn. 222, 32 N. W. 2d 603, 2 A. L. R. 2d 1227, 1232. A motion to dismiss the complaint on the ground that it fails to state a cause of action, however, while permissible in the federal courts (Anderson, Declaratory Judgments, section 102) is not a proper pleading under our Oregon practice. In the present case, the motion of Clatsop County District Boundary Board to dismiss the complaint because of failure to state sufficient facts to

constitute a cause of action against that defendant, appears to have served the office of a demurrer, and to have been so treated by the trial court. No error is assigned in that connection.

■ The first cause of action involved the closing of the polls before the expiration of the time during which, in accordance with the posted notices, they were to remain open. If the premature closing of the polls deprived plaintiff Huckleberry, a registered voter, of the right to cast his ballot, and if the result of the election was affected thereby, the election was invalid. We think that the complaint, as summarized earlier in this opinion, sufficiently stated a cause of action in this regard.

It is suggested that the posted notices called a special school meeting rather than an election, and, in this connection, it is contended that there is no requirement of law that a school meeting shall be kept open for election purposes for the full time stated in the posted notices.

■ It seems that the statutes use the terms "school meeting" and "school election" synonymously. See section 111-831, O. C. L. A., as amended by chapter 49, L. 1943; sections 111-832 and 111-833, O. C. L. A.; and section 111-834, O. C. L. A., as amended by chapter 27, L. 1941, and chapter 78, L. 1945. *Zeek v. Union School District,* Or., 211 P. 2d 740, 745; modified and affirmed, 50 Adv. Sh. 107 (January 24, 1950). Under section 111-831, O. C. L. A., as amended by chapter 49, L. 1943, the district boundary board, upon receiving a petition signed by a prescribed minimum number of the legal school voters of each of two or more contiguous school districts which it is proposed to consolidate, is required to notify the district school board of each such

district of the filing of such petition, and to fix the date of and be responsible for the posting of notices for a school meeting in each district to vote upon the question of such consolidation. It is true that there is nothing in the statute requiring that the meeting shall be held open for any particular length of time. However, the purpose of giving election notices is ''to inform [the] legal voters of the time, place, and objects'' of the election. *State v. Sengstacken,* 61 Or. 455, 469, 122 P. 292. It is held that time is an essential element of a valid election. 29 C. J. S., Elections, section 77; *City of Salem v. Oregon-Wash. Water Service Co.,* 144 Or. 93, 110, 23 P. 2d 539. And it would seem that, the notices in the present case having informed the electors that the meeting would be held from seven o'clock, p.m., to nine o'clock, p.m., on a day certain, the chairman and other election officials were obliged to keep the meeting and the polls open continuously between such hours. If they failed to do so, and if such failure resulted in plaintiff Huckleberry, a registered voter, being denied the right to exercise his franchise at the election, and if the lack of his vote was sufficient to change the result of the election, as is alleged to be the fact, then it would seem that the election would have to be set aside. *Roesch v. Henry,* 54 Or. 230, 244, 103 P. 439; *Links v. Anderson,* 86 Or. 508, 520, 168 P. 605. While courts are reluctant to set aside elections in which the people actually have had an adequate opportunity to express themselves at the polls (*Witham v. McNutt,* Or., 208 P. 2d 459, 472), nevertheless, even the utmost liberality ought not to approve an election at which the polls were not kept open for the period stated in the published notices, with the result complained of in the present case. We are assuming, of course, for the

purposes of the present discussion, that the allegations of the complaint in that regard are true.

The briefs devoted much space to arguments upon the question of whether standard time or daylight-saving time was in effect, at the time of the election, within the district in which the election was held. As the complaint contained nothing that suggested the propriety of raising this question by demurrer, its discussion on this appeal is irrelevant. However, as the cause must be remanded for trial, we will discuss the point briefly.

■ "Daylight-saving" time is a system of time under which standard time is advanced one hour or more "for the purpose of taking advantage of the longer periods of daylight during the summer months". 52 Am. Jur., Time, section 4. According to the complaint, the posted notices of election simply stated that a special meeting would be held at the schoolhouse in District No. 3, on the 2d day of May, 1949, at 7:00-9:00, p. m., for the object of voting upon the question of consolidation with District No. 15, Clatsop County, Oregon. As of May 2, 1949, there was no statutory standard of time in Oregon. (The legislature adopted such standard by chapter 373, L. 1949, but that act was not in effect at the time of the election in question.) What is called "standard time" was adopted as the measure of time in the United States by the Act of March 19, 1918 (15 U. S. C. A., sections 261-263.) Under the designation of "standard" or "railroad" time, it had been adopted, about the year 1883, as an arbitrary standard of time, by the principal railroads of the United States, for the purpose of securing uniformity in the operation and connection of their trains. Thereafter, it became adopted generally by people in all walks of life, and, prior to the enactment

of any statutory standard, it was officially recognized by the national government. Anno., 143 A. L. R. 1238; *Salt Lake City v. Robinson,* 39 Utah 260, 116 P. 442, 35 L. R. A. (N.S.) 610, Ann. Cas. 1913E 61. We take judicial notice that it has been the recognized standard of time in Oregon for many years past.

■ It is asserted by the respondents that, at the time of the election, daylight-saving time was the prevailing time in use by all of the people of Clatsop county, but, even if that were true, such time would not, in our opinion, prevail over the standard time in general use throughout the state, at least in the absence of a local municipal ordinance adopting daylight-saving time. But, as to the validity of such a municipal ordinance, see Anno., 143 A. L. R. 1240, text and note 10.

In our opinion, in sustaining the School District's demurrer, and in allowing the District Boundary Board's motion to dismiss, the trial court erred.

■ Counsel for plaintiffs contends that, under the declaratory judgments law, plaintiffs "have a choice between impanelling a jury" and "allowing the trial judge to decide the question of fact". In this, counsel is surely in error. The appropriate section of the statute reads:

"When a proceeding under this act involves the determination of an issue of fact, such issue may be tried and determined in the same manner as issues of fact are tried and determined in other actions at law or suits in equity in the court in which the proceeding is pending."

Section 6-609, O. C. L. A.

■ This court has held that, where no method of contest is provided by statute, courts of equity have jurisdiction to determine the legality of an election

relating to the adoption or rejection of some local question, and not involving the election of officers of government. *Marsden v. Harlocker,* 48 Or. 90, 98, 85 P. 328; *Priest v. James,* 125 Or. 72, 75, 265 P. 1092. In the case at bar, no statutory method of direct contest was available to plaintiffs. The declaratory judgments procedure, which they have adopted, takes its form, under the statute quoted above, from the character of the relief which is sought. In this instance, the relief sought is of equitable cognizance. Questions of fact which may have to be established in the case, therefore, must be tried and determined as in other suits in equity. It follows that plaintiffs are not entitled to trial by jury herein.

The third cause of action alleged that certain named persons "are residents and inhabitants of Clatsop Plains Precinct and reside within School District No. 3, County of Clatsop, State of Oregon"; that such persons presented themselves at the polls for the purpose of voting on consolidation, and that they had their right to vote challenged; that the chairman of the meeting failed to administer to them the statutory oath and to interrogate them respecting their places of residence and the length of their residence in the district, as he was required by law to do; that such persons were denied ballots in said election, and (on information and belief), that the clerk of election failed to list the names "of said voters" upon the poll books.

We think that this cause of action was vulnerable to the general demurrer. The persons referred to were not in any manner identified in the pleading as qualified voters of the precinct. Section 111-910, O. C. L. A., (since repealed by chapter 329, L. 1949). They were described merely as residents and inhabitants of

the precinct, and again, somewhat obscurely, as "said voters". It is not indicated that they had any of the qualifications of voters as prescribed by the statute. In our opinion, the demurrer to this cause of action was properly sustained.

The second cause of action, upon which alone the trial was had, alleged that plaintiff Harry Webb, a registered voter of the precinct, presented himself at the meeting for the purpose of voting on the consolidation of the two districts; that the defendant John S. Dellinger, chairman of the meeting, told him that he did not have the right to vote; that Dellinger failed to administer the statutory oath to Webb, and to interrogate him respecting the place of his residence and length of residence in the district; that, if he had been allowed to vote, Webb would have voted against consolidation, in consequence of which the election would have resulted in a tie.

█ The trial judge held that the evidence did not show that Mr. Webb's right to vote was actually challenged by anybody. We concur in that holding. It is unnecessary to go into minute detail as to the evidence upon this question. Mr. Webb made some inquiry of the chairman as to whether or not he had a right to vote. The chairman asked him if he had voted in the last two elections, and Mr. Webb said that he had not, but that he had re-registered within the past two weeks. The chairman told him that, under those circumstances, he was not entitled to vote. This ruling apparently satisfied Mr. Webb, who did not pursue the matter further. In our opinion, his right to vote was not challenged. *Scofield v. Stanley,* Or., 202 P. 2d 509, 516.

█ By reason of the trial court's erroneous rulings upon the demurrer and the motion to dismiss, and its

dismissal of the whole of the cause, we have no alternative other than to reverse the judgment. It will be reversed accordingly in so far as it dismissed the first cause of action, and, for the rest, affirmed. The cause will be remanded for hearing upon such first cause of action. Under all the circumstances, costs on this appeal will not be allowed to any party. Section 6-610, O. C. L. A.

PAGE, J., did not participate in this opinion.