No. 5 January 17, 2013 189

IN THE SUPREME COURT OF THE
STATE OF OREGON

Mike MORGAN,
*Petitioner on Review*,

*v.*

SISTERS SCHOOL DISTRICT #6
and its Board of Directors,
*Respondent on Review*.

(CC 08-CV-0423AB; CA A142252; SC S059465)

On review from the Court of Appeals.*

Argued and submitted March 5, 2012.

Ross A. Day of The Day Law Group, P.C., Portland, argued the cause and filed the brief for petitioner on review.

Peter R. Mersereau of Mersereau & Shannon, LLP, Portland, argued the cause and filed the brief for respondent on review. With him on the brief was Thomas W. McPherson.

Before Balmer, Chief Justice, Kistler, Walters, Linder, and Landau, Justices, and Durham and De Muniz, Senior Judges, Justices pro tempore.**

LANDAU, J.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

———————

* Appeal from Deschutes County Circuit Court, Alta Jean Brady, Judge. 241 Or App 483, 251 P3d 207 (2011).

** Brewer and Baldwin, JJ., did not participate in the consideration or decision of this case.

**LANDAU, J.**

At issue in this case is whether plaintiff has standing under the Uniform Declaratory Judgments Act, ORS 28.020, to seek a declaration that defendant Sisters School District #6 and its Board of Directors (board) lacked authority to enter into a particular form of financing arrangement without a vote of the people. Plaintiff alleged that he has standing because his "status as a taxpayer and voter within the district will or may be adversely affected[.]" More specifically, plaintiff alleged that entering into the challenged form of financing arrangement might, in some unspecified way, "jeopardize the district[']s ability to provide for the daily operation of the district" and, if that should come to pass, increase the likelihood that the district will have to seek additional financing to cover its obligations.

The trial court concluded that those allegations were insufficient to satisfy the requirement of ORS 28.020 that only persons "whose rights, status or other legal relations are affected" by the challenged ordinance have standing. The Court of Appeals likewise concluded that the harm that plaintiff alleges is too attenuated and speculative to satisfy the standing requirement of the Uniform Declaratory Judgments Act. *Morgan v. Sisters School District* #6, 241 Or App 483, 251 P3d 207 (2011). We agree and affirm.

The relevant facts are uncontested. On March 12, 2007, the board adopted Resolution No #FY 06-07-06, which authorized the issuance and negotiated sale of "Full Faith and Credit Obligations, Series 2007" in an amount not to exceed $2.1 million. The resolution stated that the obligations were to be issued as "certificates of participation" under ORS 271.390, which authorizes public bodies to issue that type of obligation to fund the acquisition or improvement of certain property, secured by any or all "lawfully available funds of the public body or council of governments"—in essence, the full faith and credit of the governmental unit. The stated purpose of the obligation was to finance the cost of improvements to district property, including classrooms, furniture, fixtures, building system upgrades, and the like. On May 22, 2007, Wells Fargo Bank, acting as escrow agent, issued the certificates of participation for purchase by investors.

One year later, in May 2008, plaintiff filed a complaint for declaratory and injunctive relief against the district and the board. Plaintiff alleged that the obligations that had been denominated "certificates of participation" actually were bonds, which, under ORS 328.205 to 328.230, may be issued only after approval by a majority of the electors in the school district. Plaintiff alleged that his "status as a taxpayer and voter within the district will or may be adversely affected by the actions of the school district as alleged in paragraph 16(e) and 16(f)" of his complaint. In those paragraphs, he alleged:

"(e)   The issuance of 'bonds' without the approval of the electorate, may jeopardize the district['s] ability to provide for the daily operation of the district.

"(f)   The issuance of the 'bonds' by the district without voter approval increases the likelihood that the district will have to seek voter approval of additional bonds either as local option bonds or general obligation bonds. ORS 328.205 et seq. is intended to initially require voter approval and thus avoid the prospect of spending too much money in the form of full faith and credit obligations and then seeking voter approval."

In his prayer for relief, plaintiff requested that the court declare that the certificates of participation at issue actually are bonds and that "the district wrongfully failed to obtain the approval of the voters within the school district" before issuing those bonds. Notably, plaintiff did not ask for a declaration that the certificates of participation are invalid. Nor did he request an order that the matter be put to a vote. He asked that the court prohibit the district from making any further payments on the obligations; that is, he requested that the court order the district simply to default on the obligations.

Plaintiff moved for summary judgment, arguing that the certificates of participation issued by the district were bonds that should not have been issued without prior voter approval.

Defendants filed their own motion for summary judgment that responded to plaintiff's arguments on the merits, but they also requested dismissal of the action

for want of justiciability. Pointing to the allegations of standing in paragraphs 16(e) and 16(f) of the complaint, defendants argued that, at best, plaintiff had alleged only a remote possibility that the issuance of the certificates of participation would affect him in any way. Such a remote possibility of harm, defendants argued, was not sufficient to establish the concrete stake in the outcome of a case that the law requires.

Plaintiff responded that he need only allege a "potential impact" to proceed on a taxpayer standing theory and that he had made such an allegation by arguing "ultimate facts, which, if established, would demonstrate that plaintiff would be required to pay proportionately more taxes for the same or less educational services."

The trial court denied plaintiff's motion for summary judgment, granted defendants' motion, and entered judgment dismissing the case. In a memorandum opinion, the trial court explained that plaintiff lacks standing because the "potential impact" of the district's actions that plaintiff had described is "attenuated and speculative."

Plaintiff appealed, assigning error to the trial court's denial of his motion for summary judgment and to the granting of defendants' motion. He argued that the trial court had erred in concluding that he lacks standing and that the court should have ruled in his favor on the merits. On appeal, plaintiff's arguments on standing were rather more elaborate than those advanced before the trial court. He argued that he has standing both as a voter and as a taxpayer. Regarding his standing as a voter, plaintiff argued that he alleged that he is a voter within the school district and that he had been deprived of the right to vote on the issuance of the financial obligations that are at issue. That, he contended, is all that the law requires to establish standing. As for his standing as a taxpayer, he argued that documents in the summary judgment record show that the certificates of participation that the district issued require it to pay as much as $240,400 per year in principal and interest payments until 2022. According to plaintiff, "[i]f the district was unable to make its payments of principal and interest[,]" then the purchasers of those certificates of

participation "would have both the contractual and statutory right to force the district to levy a tax to pay the money due to them."

In response, defendants argued first that plaintiff had failed to preserve his contention that he has standing as a voter. According to defendants, plaintiff's only argument to the trial court was that he has taxpayer standing, based on the potential financial impact of a possible default on the financial obligations. Regarding the issue of taxpayer standing, defendants argued that the trial court correctly concluded that the allegations of potential injury are simply too speculative to satisfy the more direct interest that the law requires.

The Court of Appeals affirmed. The court began with plaintiff's argument that he has standing as a voter, separate and distinct from his standing as a taxpayer. The court concluded that plaintiff had failed to raise that particular theory before the trial court and was therefore precluded from asserting it for the first time on appeal. *Morgan*, 241 Or App at 488. In any event, the court noted, under existing case law, voter standing is limited to those cases in which it is alleged that the deprivation of the right to vote would have affected the outcome of the election at issue, and no such allegation had been made in this case. *Id*. at 487-88.

Turning to taxpayer standing, the court concluded that the connection between the approval of the certificates of participation and any possible harm to plaintiff was too speculative to demonstrate that his rights are "affected" for purposes of ORS 28.020. The court explained that a long chain of uncertain events would have to occur before plaintiff would experience actual harm as a result of the issuance of the certificates of participation:

> "First, the district must find itself unable to pay back the principal and interest on the [certificates of participation] from available revenues. Second, some authoritative tribunal must determine that the district has no discretion in deciding how to remedy the default on its own: it must raise taxes by floating a bond (instead of, for example, declaring bankruptcy or liquidating assets). Third, the bond

issue must pass. Fourth, plaintiff must still be a resident of the district when the bond issue passes. Fifth, plaintiff must have resources that are affected by the bond issue."

*Id*. at 490.

Before this court, plaintiff contends that the Court of Appeals erred in concluding that he lacks standing. As he argued before that court, he now argues on review that he has standing both because he is a voter who has alleged the loss of the right to vote and because he is a taxpayer who may be adversely affected should the district be unable to pay its obligations. In addition, he advances a new argument that he denominates "hybrid" standing; that is, even if he lacks standing as a voter or a taxpayer, he still has standing because of the combination of both those interests.

"Standing" is a term of art that is used to describe when a party "possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Dept. of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). Whether a plaintiff has standing depends on the particular requirements of the statute under which he or she is seeking relief. *Local No. 290 v. Dept. of Environ. Quality*, 323 Or 559, 566, 919 P2d 1168 (1996).

In this case, plaintiff seeks declaratory relief under the Uniform Declaratory Judgments Act, ORS 28.020, and also injunctive relief. We begin with his request for declaratory relief under ORS 28.020, which provides:

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

Thus, to seek relief under the Uniform Declaratory Judgments Act, a plaintiff must establish that his or her "rights, status, or other legal relations" are "affected by" the relevant instrument. This court's prior cases have variously

described the test for establishing that a plaintiff's rights are affected under that provision. We draw from those cases three related but separate considerations.

The first consideration is that there must be "some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or the validity of a law." *League of Oregon Cities v. State of Oregon*, 334 Or 645, 658, 56 P3d 892 (2002). It is not sufficient that a party thinks an enactment or a decision of a government entity to be unlawful. The standing requirements of ORS 28.020 require that the challenged law must affect *that party's* rights, status, or legal relations.

Thus, for example, in *Eacret et ux v. Holmes*, 215 Or 121, 333 P2d 741 (1958), the plaintiffs initiated an action under the Uniform Declaratory Judgments Act, requesting a declaration that the Governor lacked the constitutional authority to commute the sentence of death that had been imposed on the defendant, who had been convicted of murdering their son. This court affirmed the dismissal of the action for want of standing. The court explained that "[t]he wrong of which they complain—if there be a wrong—is public in character. The complaint discloses no special injury affecting the plaintiffs differently from other citizens." *Id*. at 124. "There is no case for declaratory relief," the court concluded, "where the plaintiff seeks merely to vindicate a public right to have the laws of the state properly enforced and administered." *Id*. at 125 (internal quotation marks omitted). *See also League of Oregon Cities*, 334 Or at 658 (plaintiff must show "'some injury or other impact upon a legally recognized interest beyond an abstract interest in the correct application or the validity of a law'"); *Cummings Constr. v. School District No. 9*, 242 Or 106, 110, 408 P2d 80 (1965) (construction contractors lacked standing to challenge school district construction bidding practices when they did not bid for school district construction work).

The second consideration is that the injury must be real or probable, not hypothetical or speculative. As this court explained in *TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003), "This court consistently has held that courts cannot issue declaratory judgments in a vacuum;

they must resolve an actual or justiciable controversy. To be justiciable, a controversy must involve a dispute based on present facts rather than on contingent or hypothetical events." (Citations omitted.)

   *Gruber v. Lincoln Hospital District*, 285 Or 3, 588 P2d 1281 (1979), illustrates that principle. In that case, the plaintiff initiated an action for a declaration that a contract between the municipal health district and a physician was unlawful. The trial court dismissed the action for lack of standing. On appeal, the plaintiff argued that he had standing as a taxpayer, entitled to challenge actions of the municipal health district that amounted to a misuse of public funds. This court rejected the argument, explaining that the plaintiff had failed to describe how the actions of the municipal health district led to any "actual or potential adverse fiscal consequences" as to him personally. *Id*. at 8. "When the potential fiscal implications of a public contract are not apparent on its face," the court explained, "they should not be left to judicial speculation; they need to be asserted, if a plaintiff relies on his interest as a taxpayer" to proceed under ORS 28.020. *Id*. at 9.

   *Savage v. Munn*, 317 Or 283, 856 P2d 298 (1993), also is instructive. In that case, the plaintiffs initiated a declaratory judgment action, challenging the constitutionality of a property tax limitation enacted in 1990 as Ballot Measure 5. Plaintiffs alleged that the measure would have the effect of making them pay proportionally more for the same services than others who owned similar properties. The defendants argued that the case should be dismissed for want of standing because the plaintiffs' claims were based on the hypothetical operation of the ballot measure and because they had failed to demonstrate a "direct effect" of the challenged law on their personal tax bills. The court rejected the argument, explaining that the gravamen of the plaintiffs' claim in that case was not the unconstitutionality of the *amount* of their taxes, but rather the *manner* in which taxes were capped under Ballot Measure 5, which, the court stated, "are 'present facts,' not simply possible future events." *Id*. at 292. Under those circumstances, the court explained, specifying how the

law would affect the amount of plaintiffs' tax bills was not required. *Id.*

The third and final consideration is that the court's decision must have a practical effect on the rights that the plaintiff is seeking to vindicate. *Kellas*, 341 Or at 484-85 (discussing practical effects requirement of ORS 28.020). That is to say, a connection must exist between the rights that a plaintiff seeks to vindicate and the relief requested. The relief that the plaintiff seeks, if granted, must redress the injury that is the subject of the declaratory judgment action. As this court explained in *Cummings Constr.*, 242 Or at 110, there must be "a real and substantial controversy admitting of specific relief through a decree of conclusive character." Otherwise, the court's decision will amount to no more than an advisory opinion.

Thus, for example, in *Hazell v. Brown*, 352 Or 455, 467, 287 P3d 1079 (2012), the plaintiffs initiated an action under the Uniform Declaratory Judgments Act, challenging the Secretary of State's determination that a voter-approved ballot measure was "dormant" and had not yet gone into effect. On appeal, they also asked the court to declare specific provisions of the measure unconstitutional. This court declined to do that. The court began by noting that the parties had standing to challenge whether the statute had gone into effect; they alleged the requisite interest and sought a remedy to effectuate that interest. *Id.* But, the court noted, they had neglected "to seek any specific relief connected to the application or nonapplication of the individual provisions in question." *Id.* Consequently, their complaint was insufficient "to allege a justiciable controversy under the declaratory judgment act, as to the individual provisions" of the ballot measure. *Id.* An opinion on the constitutionality of the individual provisions, the court concluded, would amount to an impermissible advisory opinion. *Id.* at 468. *See also Strunk v. PERB*, 338 Or 145, 153, 108 P3d 1058 (2005) (standing requires "some practical effect on [a] party's rights"); *Barcik v. Kubiaczyk*, 321 Or 174, 188, 895 P2d 765 (1995) (declaratory relief is available "only when it can affect * * * some rights between the parties"); *Brown v. Oregon State Bar*, 293 Or 446, 449,

648 P2d 1289 (1982) ("A justiciable controversy results in specific relief through a binding decree as opposed to an advisory opinion[.]"); *Gortmaker v. Seaton*, 252 Or 440, 443, 450 P2d 547 (1969) (plaintiff lacked standing under Declaratory Judgments Act because a decision would not affect his rights).

With the foregoing principles in mind, we turn to the parties' arguments about plaintiff's standing in this case, beginning with plaintiff's contention that he has standing as a voter who has been denied the right to vote on the financial obligations that the district issued. As we have noted, defendants argue—and the Court of Appeals agreed—that plaintiff failed to preserve that particular theory of standing. Plaintiff argues that the Court of Appeals erred in concluding that he failed to preserve that theory of standing. He contends that, by alleging in his complaint that his "status as a taxpayer and voter" was adversely affected, he alerted the trial court and defendants that he was relying on voter standing.

We are doubtful that the bare allegation in the complaint that plaintiff was adversely affected as a voter, without more, suffices to preserve his current contention that he has standing as a voter who was deprived of the right to vote. *See, e.g., Gruber*, 285 Or at 7-8 ("[A] complaint under this section [ORS 28.020] must show *how* plaintiff's 'rights, status, or other legal relations are affected' by an instrument or enactment." (Emphasis added.)). Indeed, although the complaint does allege that plaintiff's rights as a voter were adversely affected, the only allegation as to the nature of that adverse effect was the fact that he might suffer financial harm should the district be unable to meet its obligations. And, consistently with that allegation, the only argument that plaintiff made to the trial court was that he has standing because of that potential fiscal impact on him as a taxpayer.

Even assuming for the sake of argument that plaintiff adequately preserved his contention that he has voter standing based on the loss of his right to vote on the resolution approving the certificates of participation, the contention ultimately fails. At the outset, we note that this

court has recognized that the denial of the right to vote can satisfy the personal injury requirement that the Uniform Declaratory Judgments Act makes a prerequisite to standing. In *Webb v. Clatsop Co. School Dist. 3*, 188 Or 324, 215 P2d 368 (1950), a voter brought a declaratory judgment action, seeking to set aside the results of an election in which he had been denied the right to vote. The particular election involved two school districts that had voted to consolidate. The consolidation proposal had been approved by a margin of a single vote. In challenging the validity of the election, the plaintiff noted that, had he been permitted to vote, the outcome of the election would have been different. The defendant school districts sought dismissal of the action on the ground that the plaintiff lacked standing. This court disagreed, holding that the complaint clearly set out the denial of his right to vote, followed by "an appropriate prayer in that regard." *Id*. at 331. It bears some emphasis that the court's decision was based not only on the allegation of a denial of the right to vote, but also on the existence of an "appropriate prayer," that is, one that, if granted, would have remedied the injury of which the plaintiff complained. The court also noted that the plaintiff had alleged that, had he been permitted to vote, the outcome of the election would have been different. But it is not entirely clear from the court's opinion how much difference that made in its analysis.

In this case, plaintiff did allege in his complaint that he was a voter who had been denied the right to vote. But, unlike the plaintiff in *Webb*, plaintiff in this case seeks no relief that could remedy the denial of his right to vote. His complaint does not ask for an order compelling the district to hold an election. It simply asks for a declaration that the district should have held one. Such a declaration would have no practical effect on plaintiff's voting rights and would amount to a purely advisory opinion. We therefore conclude that his allegation that he is a voter who has been denied the right to vote is inadequate to satisfy the standing requirements of ORS 28.020.

In reaching that conclusion, we emphasize that we are not holding that plaintiff lacks standing because he

merely asks for a declaration that his rights had been violated. To the contrary, in appropriate cases, such a declaration is adequate to satisfy the practical effect requirement that this court's cases have described. In cases involving disputed provisions of a contract or insurance policy, for example, a declaration of the parties' rights under that contract or policy can have a concrete effect on the parties to it. *See, e.g.*, *Carey v. Lincoln Loan Co.*, 342 Or 530, 532-33, 157 P3d 775 (2007) (action for declaration as to enforceability of provisions in loan agreement); *North Pacific Ins. Co. v. Hamilton*, 332 Or 20, 22-23, 22 P3d 739 (2001) (action for declaration as to insurer's liability under a policy of liability insurance). Or, for another example, in cases involving a recurring action, a declaration of the lawfulness of that action can have a practical effect in establishing the basis for further relief, such as an injunction, *see, e.g., State ex rel Oregonian Publishing Co. v. Sams*, 298 Or 329, 333, 692 P2d 116 (1984) (suggesting that "the appropriate remedy for challenging a recurring practice that is believed to be illegal is by declaratory judgment"), or monetary damages, *see, e.g., Ken Leahy Construction, Inc. v. Cascade General, Inc.*, 329 Or 566, 573-74, 994 P2d 112 (1999); *Lowe v. Harmon*, 167 Or 128, 136, 115 P2d 297 (1941) (relief under the Declaratory Judgments Act "may include an assessment of damages"). In this case, however, plaintiff has offered no explanation as to how the issuance of the judicial declaration that he seeks would have any practical effect on his voting rights, and we are aware of none.

We turn then to plaintiff's contention that he nevertheless has adequately alleged taxpayer standing based on the potential financial impact of the issuance of the certificates of participation. As we have described, plaintiff alleged that the issuance of the certificates of participation "may jeopardize the district[']s ability to provide for the daily operation of the district." His complaint, however, does not explain why the issuance of those obligations might have that effect. Moreover, he does not allege that the district's potential inability to provide for its daily operations affects him in any way. He also alleged that the issuance of the obligations "increases the likelihood" that the district will have to seek additional funds from taxpayers like himself.

The problem is that such a "likelihood" is "increased" only in the event that the district finds itself unable to pay its obligations, and even then, only if the voters were to approve a district request for additional funding, and further, only if plaintiff remains a resident of the district when those other events occur. Thus, plaintiff's allegations that the issuance of the certifications of participation will affect him are predicated on a series of hypothetical contingencies, not on present facts. As such, they are inadequate to satisfy the requirements of standing under the Uniform Declaratory Judgments Act.

That leaves plaintiff's proposed "hybrid" standing argument: That is, even if he lacks standing as a voter and a taxpayer, he should be held to possess standing as a voter who has not only been denied the right to vote, but who also has suffered (or will suffer) financial loss as a taxpayer. Even assuming for the sake of argument that it is permissible for plaintiff to advance such an argument at this late stage, the argument is unavailing. The fact remains that a declaratory judgment in this case will not remedy any injury to plaintiff's voting rights. And adding to the inquiry his allegations of purely contingent, hypothetical fiscal harm does not alter that fact.

Plaintiff also seeks injunctive relief, specifically, an order that the district not continue to pay on the certificates of participation. As this court observed in *Eckles v. State of Oregon*, 306 Or 380, 386, 760 P2d 846 (1988), no statute governs the issue of standing to seek injunctive relief. Nevertheless, the court explained, it has long applied essentially the same standing requirements that ordinarily apply in declaratory judgment actions. *Id.* In fact, in a number of the cases that we have described above concerning the three requirements of standing under the Uniform Declaratory Judgments Act, the plaintiffs sought both declaratory and injunctive relief, and the court did not distinguish between the forms of relief in assessing the issue of standing. *See, e.g.*, *Hazell*, 352 Or at 467-68; *League of Oregon Cities*, 334 Or at 657-62; *Barcik*, 321 Or at 179. In light of the fact that the same standing standards apply to plaintiff's request for declaratory and injunctive relief, we

conclude that, for the reasons that we have described with respect to his request for declaratory relief, his claim for injunctive relief also fails for lack of standing.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.