Argued and submitted July 15; judgment for plaintiff reversed, remanded with instructions to dismiss complaint September 8, 2022

KLAMATH IRRIGATION DISTRICT,
*Plaintiff-Respondent,*

*v.*

OREGON WATER RESOURCES DEPARTMENT,
an agency of the State of Oregon;
Thomas Byler, in his official capacity as
Director of the Oregon Water Resources Department;
and Danette Watson, in her official capacity as
Watermaster for the Oregon Water Resources Department,
*Defendants-Appellants.*

Marion County Circuit Court
20CV17922; A176270

518 P3d 970

In this action brought by plaintiff Klamath Irrigation District, a quasi-municipal corporation organized under ORS chapter 545, defendants Oregon Water Resources Department (OWRD), its director Thomas Byler, and Danette Watson, the watermaster for the department's District 17, appeal from an order of the Marion County Circuit Court compelling defendants to direct the United States Department of the Interior's Bureau of Reclamation (Bureau) to cease releasing stored water from Upper Klamath Lake through the Link River Dam for instream uses for which plaintiff contends the Bureau has no Oregon water right or authority under the federal Reclamation Act. Defendants contend that the trial court erred in denying their motion to dismiss plaintiff's claim or in denying their motion for summary judgment for the failure to join the Bureau as an indispensable party. *Held*: The Bureau was a necessary party to the litigation under ORCP 29 A, because the relief requested and ordered by the trial court is inconsistent with the Bureau's obligations under federal law, and an order to the Bureau to cease the release of stored waters from Upper Klamath Lake would impair the Bureau's obligations under the Endangered Species Act and to Indian tribes and would be but a pyrrhic victory for plaintiff that would likely be overturned in federal court. The Bureau, as a part of the federal government, cannot be compelled to join in the litigation. The factors described in ORCP 29 B require the conclusion that the Bureau was an indispensable party. The trial court therefore abused its discretion in allowing the litigation to proceed without the Bureau.

Judgment for plaintiff reversed; remanded with instructions to dismiss complaint.

J. Channing Bennett, Judge.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellants. Also on the briefs were Ellen F. Rosenblum, and Benjamin Gutman, Solicitor General.

Nathan R. Rietmann argued the cause for respondent. Also on the brief was Rietmann Law, P.C.

Paulo Palugod, Washington, argued the cause for *amicus curiae* Pacific Coast Federation of Fishermen's Associations, Institute for Fisheries Resources, and WaterWatch of Oregon. Also on the brief were Karl G. Anuta and Law Office of Karl G. Anuta, P.C., and Patti A. Goldman, Washington.

Before Tookey, Presiding Judge, and Egan, Judge, and Hellman, Judge.

TOOKEY, P. J.

Judgment for plaintiff reversed; remanded with instructions to dismiss complaint.

**TOOKEY, P. J.**

Plaintiff Klamath Irrigation District (plaintiff), a quasi-municipal corporation organized under ORS chapter 545, brought this action in the Marion County Circuit Court against defendants Oregon Water Resources Department (OWRD), its director Thomas Byler, and Danette Watson, the watermaster for the department's District 17 (together, defendants),[1] seeking an order directing OWRD to order the United States Department of the Interior's Bureau of Reclamation (Bureau) to cease releasing stored water for "instream uses" from the Link River Dam, for which plaintiff contends the Bureau has no Oregon water right or authority under the federal Reclamation Act. Defendants appeal from a general judgment of the trial court, assigning error to the trial court's order granting of plaintiff's request for relief under ORS 540.740 and compelling defendants to direct the Bureau to cease releasing stored water. Defendants contend that the trial court erred in denying their motion to dismiss plaintiff's claim or in denying their motion for summary judgment.[2] We conclude that the trial court erred in denying defendants' motion to dismiss and therefore reverse.

The background facts are undisputed. The Klamath basin, in southern Oregon and northern California, is the drainage basin for the Klamath River and other smaller rivers and tributaries and includes Upper Klamath Lake. Upper Klamath Lake is a large shallow freshwater lake that drains into the Link River and then through the Link River and Lake Ewauna to the Klamath River to the south. The Klamath Tribes, the Yurok Tribe, and the Hoopa Valley Tribe of Native Americans have fished in the waters of the Klamath Basin since time immemorial and have treaties protecting those rights. *Baley v. United States*, 942 F3d 1312, 1321-22 (DC Cir 2019), *cert den*, ___ US ___, 141 S Ct 133, 207 L Ed 2d 1078 (2020).

---

[1] In this opinion, we refer to the Klamath Irrigation District as "plaintiff" and the state parties as "defendants," as they are correctly designated in the pleadings in the trial court and in the state's opening brief, rather than as "petitioner" and "respondents," as they are designated on the captions.

[2] The Pacific Coast Federation of Fishermen's Associations, the Institute for Fisheries Resources, and WaterWatch of Oregon submitted a brief as *amici curiae* in support of the OWRD's appeal.

In 1905, after the enactment of the federal Reclamation Act of 1902, and, as authorized by the Oregon Reclamation Act, Or Laws 1905, ch 228, § 2, the Bureau claimed all unappropriated water of the Klamath River, and took control of all water in the Klamath Basin "for irrigation, domestic, power, mechanical and other beneficial uses in and upon lands situated in Klamath Oregon and Modoc California counties."[3] The Bureau paid for the development of the Link River Dam, as part of the Klamath Reclamation Project (the Project), a complex system of irrigation works built to enable farming by settlers in the Klamath Basin. The Bureau manages the Project. Water flowing from Upper Klamath Lake into the Klamath River is controlled by the Link River Dam, which is in the Link River at the outlet of Upper Klamath Lake. The Link River Dam is owned by the Bureau but operated by Pacificorp. When water levels are high, the Link River Dam serves to allow the storage of water in Upper Klamath Lake for agricultural irrigation and other uses.

In 1909, Oregon enacted the Water Rights Act, now codified at ORS chapter 537. Under the Act, the waters of the state belong to the public, but new water rights can be obtained only by securing a permit, certificate, or license from the state. ORS 537.130(1). Water rights that existed before the effective date of the Act were not superseded but were required to be "adjudicated" through a process codified in ORS chapter 539 that includes administrative and judicial phases. ORS 539.010(4); *see* ORS 539.130 - 539.150. When a final judgment is entered, water right certificates evidencing the rights are issued and recorded with OWRD. ORS 539.140.

---

[3] In *Klamath Irrigation Dist. v. United States*, 348 Or 15, 39, 227 P3d 1145 (2010), the Supreme Court described some of the limits of the Oregon legislation:

"Reading the 1905 Oregon statute in light of the Reclamation Act that the Oregon legislature sought to facilitate, we conclude that, in authorizing the United States to appropriate water for the construction of irrigation works, the Oregon legislature did not intend to give the United States carte blanche to use the water rights it appropriated in whatever way it chose. Rather, the Oregon legislature authorized the United States to appropriate state water rights pursuant to the 1905 act for the benefit of those persons who the Reclamation Act contemplated would put water to beneficial use."

Beginning in 1976, OWRD began the administrative phase of a general stream adjudication to quantify and determine all pre-1909 state, federal, and tribal claims to the use of water in Upper Klamath Lake and the portions of the Klamath River encompassed within the adjudication (the Klamath Adjudication). In 2014, defendant Director of OWRD filed with the Klamath County Circuit Court an "Amended and Corrected Findings of Fact and Order of Determination" (the ACFFOD), which establishes "determined claims" that provisionally recognize vested rights to appropriate and use water from Upper Klamath Lake and its tributaries. The ACFFOD is presently enforceable by OWRD under Oregon law and must be followed by all owners of determined claims pending the judicial review phase of the Klamath Adjudication before the Klamath County Circuit Court. ORS 539.130; ORS 539.170.

Under the ACFFOD, the Bureau has the right to store water in the Upper Klamath Lake up to a specified maximum volume for the benefit of plaintiff and other holders of secondary water rights.

Under the ACFFOD, plaintiff holds a "determined claim" for "live flow" of water from Upper Klamath Lake and the Klamath River. By agreement with the Bureau, plaintiff has an obligation to manage and maintain certain irrigation works and to deliver water to more than 1,200 different landowners farming approximately 122,000 acres of land in the basin.

Plaintiff's main point of diversion for irrigation is the "A-Canal," the headgate of which is located near Upper Klamath Lake, above the Link River Dam. The A-Canal is operated pursuant to a water delivery contract between plaintiff and the Bureau.

The Bureau has obligations under the Endangered Species Act (ESA), 16 U.S.C. §§ 1531-44, to maintain certain water levels in Upper Klamath Lake and the Klamath Basin's rivers to preserve endangered and threatened fish populations. The Ninth Circuit Court of Appeals has determined that the Bureau's obligations under the ESA take

priority over the interests of water users under the Project. *Klamath Irrigation Dist. v. United States*, 635 F3d 505 (9th Cir 2011). The Bureau also operates the Project in accordance with the senior downstream federal tribal water levels at least as great as the minimum required by the ESA.

Conflicts over the use of water in the Klamath Basin have been the subject of much litigation and are the subjects of multiple federal court and Oregon Supreme Court opinions. *See Baley*, 942 F3d 1312 (describing litigation). A federal court injunction has ordered the Bureau to require certain types of water flows as part of its operation of the Project for the benefit of endangered fish. *Yurok Tribe v. U.S. Bureau of Reclamation*, 319 F Supp 3d 1168, 1178-79 (ND Cal 2018) (denying motion by plaintiff and other intervenors to lift a previously imposed injunction ordering the Bureau to require certain types of water flows as part of their operation of the Project in order to prevent irreparable harm to the SONCC Coho salmon, an endangered species). Thus, in 2013, the Bureau sought and obtained limited licenses from OWRD authorizing it to lawfully use stored water in Upper Klamath Lake for purposes of enhancing instream flows in the Klamath River.[4] Subsequently, the Bureau released water through the Link River Dam for nonirrigation instream purposes without obtaining state permits.

Plaintiff believed that the Bureau's release of water through the dam violated the ACFFOD, Oregon law, and the Reclamation Act. In 2018, plaintiff requested that the Bureau cease releasing water for nonirrigation instream purposes, but the Bureau refused. On plaintiff's petition, the Marion County Circuit Court issued an order, purportedly under ORS 183.490, directing OWRD "to take charge of Upper Klamath Lake for the purpose of dividing and distributing the water therefrom in accordance with the respective and relative rights of the various users of water

---

[4] For example, in 2013, the bureau requested a limited license, to which plaintiff did not object, to be "used for augmenting flows in the Link River, Lake Ewauna, and the Klamath River in support of instream resources."

in accordance with ORS 540.210."[5] OWRD did not act to plaintiff's satisfaction.

In 2020, in anticipation of a dry irrigation season, plaintiff again requested that OWRD take charge of Upper Klamath Lake for purposes of controlling the distribution of water. When OWRD did not respond swiftly to plaintiff's satisfaction, in April 2020 plaintiff sought relief in the Marion County Circuit Court and obtained an alternative writ of mandamus commanding OWRD to perform its duties under ORS 540.210 to prevent the Bureau's anticipated releases of stored water from Upper Klamath Lake. OWRD returned the writ and issued the required orders to the Bureau but did not take actual physical control of the dam away from the Bureau to prevent the Bureau from releasing water for nonirrigation instream purposes, and plaintiffs believed that, as a result of OWRD's failure to act, the Bureau has prevented plaintiff from diverting water for irrigation from the A-Canal and has continued to release stored water from Upper Klamath Lake for nonirrigation instream purposes.

Plaintiff continues to believe that the Bureau's actions violated the ACFFOD, Oregon law, and the Reclamation Act. In May 2020, it brought this action, seeking to compel defendants to prevent the Bureau from releasing stored water from the Link River Dam for "instream uses" for which the Bureau has no Oregon water right or authority under the federal Reclamation Act. Plaintiff sought an injunction requiring OWRD to take charge of Upper Klamath Lake, which plaintiff alleges "necessarily entails preventing [the Bureau] from distributing water without a water right in a manner that is contrary to the ACFFOD." Plaintiff brought its first claim under ORS 183.490, seeking to compel OWRD to act pursuant to ORS 540.210 to "take charge" of the dam

---

[5] ORS 540.210(1) provides:

"Whenever any water users from any ditch or reservoir, either among themselves or with the owner thereof, are unable to agree relative to the distribution or division of water through or from the ditch or reservoir, either the owner or any such water user may apply to the watermaster of the district in which the ditch or reservoir is located, by written notice, setting forth such facts, and asking the watermaster to take charge of the ditch or reservoir for the purpose of making a just division or distribution of water from it to the parties entitled to the use thereof."

and Upper Klamath Lake. Plaintiff also alleged under ORS 540.740 that the watermaster had failed to act "to carry into effect the order of the Water Resources Commission," within the meaning of ORS 540.740.[6] Plaintiff sought an injunction directing the watermaster

> "to carry into effect the ACFFOD by using all powers of enforcement at her disposal to stop the United States from unlawfully diverting stored water from [Upper Klamath Lake] reservoir through Link River Dam without having obtained a water right or instream lease authorizing the use, or a stay of the ACFFOD pursuant to ORS 539.180, or a final judgment providing that federal law authorizes the United States Bureau of Reclamation to use stored water in [Upper Klamath Lake] reservoir for instream purposes without securing a water right in accordance with state law and the Reclamation Act."

In short, plaintiff sought to require the watermaster to face off with the Bureau over the Bureau's alleged refusal to allow plaintiff to divert water through the A-Canal and its release of water through the Link River Dam as previously ordered by federal courts and as necessary to comply with federal law.

Defendants moved to dismiss plaintiff's claims on various grounds, and the parties also filed cross-motions for summary judgment. The trial court dismissed plaintiff's claim under ORS 183.490 but granted plaintiff's motion for summary judgment under ORS 540.740 and issued the requested injunction.[7] The trial court agreed with plaintiff that, despite claiming that it had "taken exclusive charge" of Upper Klamath Lake as required by ORS 540.210, OWRD has not determined the relative and respective rights of the users of stored water in Upper Klamath Lake as required

---

[6] Plaintiff's complaint alleged:

"Plaintiff's entitlement to use up to 3.5 acre-feet of water per year per irrigable acre, either for irrigation purposes or leasing purposes for in-stream rights, has been unilaterally seized by Reclamation, who is using it for instream purposes without a lease and without any monetary payment or lawful condemnation of this right. Despite complaints to Defendant Watson, no steps have been taken to actually stop this unlawful seizure of water rights."

[7] Plaintiff does not cross-assign error to the trial court's dismissal of its claim under ORS 183.490 to compel OWRD to act.

by that statute. The court found that the watermaster had willfully failed to carry out her duties to protect a scarce resource belonging to the people of Oregon and that OWRD "wrongfully allowed the release of Stored Waters from the UKL for uses by the Bureau without *** determining whether the Bureau had a right, permit, or license to appropriate" the stored water. The trial court's injunction orders defendant Watson to "immediately stop the distribution, use and/or release of Stored Water from the [Upper Klamath Lake] without determining that the distribution, use and/or release is for a permitted purpose by users with existing water rights of record or determined claims to use the Stored Water in the [Upper Klamath Lake]."[8]

On appeal, defendants contends that the trial court erred in denying its motion to dismiss plaintiff's claim for lack of standing or for failure to join an indispensable party, the Bureau. OWRD also contends that the trial court erred in granting plaintiff's motion for summary judgment under ORS 540.740, because the court lacked authority to issue an injunction under ORS 540.740 which, by its terms, applies only when a watermaster fails to carry into effect an order of the Water Resources Commission or a decree of a court. We address each argument in turn, conclude that the trial court did err, and therefore reverse.

In their first assignment of error, defendants contend that the trial court erred in denying their motion to dismiss on the ground that plaintiff lacks standing under ORS 540.740 to bring this action. Whether a party has standing to sue is a question of law for this court. *See Morgan v. Sisters School District #6*, 353 Or 189, 194-95, 301 P3d 419 (2013).

ORS 540.740 provides:

"Any person who may be injured by the action of any watermaster may appeal to the circuit court for an injunction. The injunction shall only be issued in case it can be shown at the hearing that the watermaster has failed to carry into effect the order of the Water Resources Commission or decrees of the court determining the existing rights to the use of water."

---

[8] The injunction is stayed pending appeal.

Defendants contend that, if and to the extent plaintiff suffered damages, it was not as a result of action or inaction by the watermaster, which did not interfere with plaintiff's diversion, but as a result of the Bureau's refusal to allow plaintiffs to divert water through the A-Canal. On that basis, defendants contend, plaintiff lacks standing to seek relief under ORS 549.740. We reject defendants' argument. ORS 540.740 makes an injunction available to any person who *may* be injured by an action of a watermaster. A plaintiff need not establish injury in order to have standing to state a claim. Plaintiff's complaint alleged that it was injured as a result of the watermaster's failure to comply with OWRD's ACFFOD order. Defendants' contention that the watermaster was not the source of any injury suffered by plaintiff is not a matter of standing but would go to the merits of the claim. We therefore reject defendants' first assignment of error.

In their second assignment, defendants contend that the trial court erred in denying their motion to dismiss for the reason that indispensable parties, including the Bureau and federally recognized tribes could not be joined. The trial court's written ruling did not explicitly address defendants' motion to dismiss on the issue of joinder, but we assume that the court did so and exercised its discretion in a manner consistent with its ruling allowing the action to proceed.

In defense of the trial court's order, plaintiff argues that its claim simply seeks to have OWRD carry out its statutory responsibility to enforce provisions of its own ACFFOD order, which includes no provision of water rights for either the Bureau or the tribes. If OWRD were to carry out its statutory duty to plaintiff, plaintiff contends, the other entities—the Bureau and the tribes—would be only indirectly affected and could assert their interests in separate litigation.

We review the trial court's denial of defendant's motion to dismiss based on the failure to join an indispensable party for an abuse of discretion. *Steers v. Rescue 3, Inc.*, 146 Or App 746, 750, 934 P2d 532 (1997). "Discretion" refers to the authority of a trial court to choose among several legally correct outcomes. *State v. Rogers*, 330 Or 282,

312, 4 P3d 1261 (2000). Because a discretionary ruling can encompass both factual and legal issues, in reviewing a ruling for abuse of discretion, it can be important to distinguish the factual and legal issues that underlie an agency or a trial court's exercise of discretion. *See Rogers*, 330 Or at 312 (explaining that, when a trial court's exercise of discretion rests on an incorrect legal premise, an appellate court will review that legal premise independently). A trial court's discretionary ruling may be legally impermissible if legal determinations were guided by the wrong substantive standard, *Espinoza v. Evergreen Helicopters, Inc.*, 359 Or 63, 116-17, 376 P3d 960 (2016), or if factual determinations lack sufficient evidentiary support. *Id*. at 117. In reviewing the trial court's ruling, we begin with ORCP 29 A, which describes when parties are necessary to a proceeding. *State ex rel Dewberry v. Kulongoski*, 220 Or App 345, 352, 187 P3d 220 (2008), *aff'd*, 346 Or 260, 210 P3d 884 (2009) ("[I]n general, ORCP 29 A defines 'necessary' parties, and ORCP 29 B pertains to whether an absent 'necessary' party is so 'indispensable' that the failure or inability to join that person precludes the prosecution of an action."). ORCP 29 A provides:

> "A person who is subject to service of process shall be joined as a party in the action if (1) in that person's absence complete relief cannot be accorded among those already parties, or (2) that person claims an interest relating to the subject of the action and is so situated that the disposition in that person's absence may (a) as a practical matter impair or impede the person's ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of their claimed interest. If such person has not been so joined, the court shall order that such person be made a party. If a person should join as a plaintiff but refuses to do so, such person shall be made a defendant, the reason being stated in the complaint."

A party is a necessary party to a proceeding under ORCP 29 A if complete relief cannot be accorded without the party, if the party's absence may impair their ability to protect their interest, or if their absence may leave other parties subject to inconsistent or multiple obligations. Whether a party is a necessary party is a legal determination that we consider as a matter of law, and we conclude that the Bureau was a necessary party.

Plaintiffs sought and the trial court ordered OWRD to "take charge" of the dam and Upper Klamath Lake to prevent the Bureau from discharging water for instream purposes. Contrary to plaintiff's contention, the effect on the Bureau and the tribes of the relief sought by plaintiff is not indirect. As noted, the Bureau, which owns the dam facilities, has been directed in a federal injunction to fulfill its obligations under the ESA and to the tribes that also have rights to the waters of the Klamath Basin. The relief ordered by trial court is inconsistent with those requirements and brings OWRD into direct conflict with the Bureau, the ESA, tribal rights, and federal case law. An order to the Bureau to cease the release of stored waters from Upper Klamath Lake would impair the Bureau's obligations under the ESA and to the tribes and would be but a pyrrhic victory for plaintiff that would likely be overturned in federal court. We conclude for those reasons that the Bureau was a necessary party that should have been joined.

As a part of the federal government, the Bureau cannot be compelled to join in state litigation. *Price v. United States*, 174 US 373, 376, 19 S Ct 765, 43 L Ed 1011 (1899). Additionally, the sovereign tribes who are potentially affected by plaintiff's claim cannot be compelled to join in state litigation. *Puyallup Tribe, Inc. v. Dep't of Game of State of Wash.*, 433 US 165, 172, 97 S Ct 2616, 53 L Ed 2d 667 (1977). The question then becomes whether the Bureau is an indispensable party, that is, whether the litigation can proceed in the Bureau's absence. That determination is made by the trial court in its discretion, *Steers*, 146 Or App at 750, and is guided by ORCP 29 B, which provides:

"If a person as described in subsections A.(1) and (2) of this rule cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate;

> fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

If a necessary party cannot be joined, the court must decide, "in equity and good conscience," whether the factors listed in ORCP 29 B require that the action continue without that party or whether it should be dismissed. We have reviewed the evidence in the record and conclude that it does not support findings on those factors that would allow the court to determine in its discretion that the litigation should continue in the Bureau's absence. In view of our determination above that plaintiff cannot obtain complete relief without the Bureau, the first three factors weigh only in favor of indispensability. The first is present, in that a judgment rendered in the Bureau's absence might be prejudicial to the Bureau. An order directing the Bureau to stop releasing water required by the ESA and by tribal treaties will come into direct conflict with the Bureau's federal obligations and would "prejudice" the Bureau. The second factor is not possible here—the prejudice cannot be lessened or avoided by shaping the relief or any other measure. The third factor is not met, that is, a judgment rendered in the Bureau's absence will not be adequate. As to the fourth and final factor, we conclude that plaintiff, who is an intervenor in federal litigation addressing the same issues, will have an adequate remedy if the case is dismissed for nonjoinder. For all these reasons, we conclude that the factors require the finding that the Bureau was an indispensable party and that the trial court therefore abused its discretion in denying defendants' motion to dismiss.

In their final assignment of error, defendants contend that the trial court erred in entering an injunction under ORS 540.740, because the watermaster's actions were not in violation of an order of the Water Resources Commission. In view of our decision that the trial court abused its discretion in dismissing plaintiff's claims in the absence of an indispensable party, we need not address that contention.

Judgment for plaintiff reversed; remanded with instructions to dismiss complaint.